The STATE of Ohio, Appellee,

v.

KERRIGAN, Appellant.

[Cite as *State v. Kerrigan*, 168 Ohio App.3d 455, 2006-Ohio-4279.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2005–CA–114.

Decided Aug. 18, 2006.

---

William F. Schenck, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for appellee.

Jon J. Saia, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Patrick Kerrigan, appeals from his conviction and sentence upon five counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3). Kerrigan argues that the evidence is insufficient, that the trial judge, who was the finder of fact in his bench trial, applied an incorrect standard of law to the evidence, and that his trial counsel was ineffective for having failed to move for a judgment of acquittal at the close of the state's case.

{¶ 2} With respect to four of the five counts upon which Kerrigan was convicted, we conclude that the video materials do not support a conviction, because they do not involve a lewd exhibition or a graphic focus on the genitals. Therefore, we agree with his contention that these convictions are not supported by sufficient evidence, these convictions are reversed, and Kerrigan is ordered discharged as to these convictions.

{¶ 3} With respect to the fifth count upon which Kerrigan was convicted, which was based upon his possession of a brochure advertising video materials, we conclude that a reasonable finder of fact might find that this brochure involves a lewd exhibition or a graphic focus on the genitals. We agree with Kerrigan, however, that the trial judge, acting as the finder of fact in his bench trial, applied an incorrect legal standard in evaluating this evidence. Accordingly, Kerrigan's conviction on this count is reversed, and this cause is remanded for reconsideration of the verdict on this count.

{¶ 4} Our disposition of Kerrigan's first assignment of error renders moot his second assignment of error, which asserts ineffective assistance of trial counsel.

I

{¶ 5} In June, 2004, Detective Craig Polson, of the Beavercreek Police Department, acting undercover, contacted Kerrigan about purchasing certain nudist videos. They met the same day, and Polson attempted to negotiate a purchase of videos. During the transaction, Kerrigan became apprehensive and attempted to terminate the transaction. Kerrigan was arrested and consented to a search of his vehicle, resulting in the seizure of three videotapes, one DVD, and a brochure, which became the basis for Kerrigan's indictment on five counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3).

{¶ 6} Kerrigan waived his right to a jury. Following a bench trial, Kerrigan submitted a posttrial memorandum, the state submitted a posttrial memorandum, and Kerrigan submitted a response to the state's memorandum. The trial court

entered a decision announcing its verdict of guilty on all five counts, which included the trial court's legal reasoning. Following a sentencing hearing, the trial court sentenced Kerrigan to five years of community-control sanctions, and advised him that violation of the terms of the community-control sanctions would lead to a prison sentence of 11 months on each of the five counts, to be served concurrently.

{¶ 7} From his conviction and sentence, Kerrigan appeals.

II

{¶ 8} Kerrigan's first assignment of error is as follows:

{¶ 9} "The court erred when it found the defendant-appellant guilty of counts one, two, three, four and five of the indictment when said findings were not supported by sufficient evidence."

{¶ 10} Although this assignment of error is framed exclusively in terms of insufficiency of the evidence, Kerrigan also argues, in support of this assignment of error, that the trial court applied an incorrect legal standard in evaluating the evidence.

### A. The Legal Standard for Illegal Use of a Minor in Nudity–Oriented Material

{¶ 11} R.C. 2907.323, under which Kerrigan was charged and convicted, provides:

{¶ 12} "(A) No person shall do any of the following:

{¶ 13} "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

{¶ 14} "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

{¶ 15} "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred."

{¶ 16} Because all of the materials upon which Kerrigan's convictions are based show persons who are indisputably minors, in states of nudity, who Kerrigan

stipulated at trial were not his children or wards, and because Kerrigan has never claimed that either of the lettered exceptions to R.C. 2907.323(A)(3) applies, this case would be easily disposed of but for the interpretation of R.C. 2907.323(A) set forth in *State v. Osborne,* sub nom. *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363, and *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98.

{¶ 17} *State v. Young* involved a constitutional attack upon R.C. 2907.323(A)(3), based upon the First Amendment to the United States Constitution, on the theory that the private possession of child pornography cannot be outlawed. In holding that R.C. 2907.323(A)(3) does not violate the First Amendment, the Ohio Supreme Court gave it a restrictive interpretation. In his opinion for the court, Justice Douglas noted that the statute "does not expressly limit the prohibited state of nudity to a lewd exhibition or a graphic focus on the genitals." 37 Ohio St.3d at 251, 525 N.E.2d 1363. In his initial analysis following this observation, Justice Douglas focuses upon the purpose of the statute as prohibiting the possession or viewing of material depicting nude minors when that conduct is not morally innocent, "i.e., the possession or viewing of the described material for prurient purposes." Id. at 252, 525 N.E.2d 1363. But in the following paragraph, where the statute is expressly construed, the focus is entirely on the character of the material or performance itself, rather than on the presence or absence of a prurient purpose in possessing or viewing it:

{¶ 18} "As we construe it today, R.C. 2907.323(A)(3) prohibits the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged."

{¶ 19} The United States Supreme Court accepted the *Osborne* case for review. In a footnote, the United States Supreme Court discussed the construction given to the statute by the Ohio Supreme Court:

{¶ 20} "The dissent distinguishes the Ohio statute, as construed, from the statute upheld in [*New York v.*] *Ferber* [458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) ] on the ground that the Ohio statute proscribes ' "lewd exhibitions of *nudity* " rather than "lewd exhibitions of *the genitals.*" ' See *post,* [495 U.S. 103] at 129[, 110 S.Ct.] at 1707[, 109 L.Ed.2d 98] (emphasis in original). The dissent notes that Ohio defines nudity to include depictions of pubic areas, buttocks, the female breast, and covered male genitals 'in a discernibly turgid state.' *Post,* [495 U.S. 103] at 130[, 110 S.Ct.] at 1707[, 109 L.Ed.2d 98]. We do not agree that this distinction between the body areas and specific body parts is constitutionally significant: The crucial question is whether the depiction is lewd, not whether the depiction happens to focus on the genitals or the buttocks. In any event,

however, Osborne would not be entitled to relief. The context of the opinion indicates that the Ohio Supreme Court believed that 'the term "nudity" as used in R.C. 2907.323(A)(3) refers to a lewd exhibition of the genitals.' *State v. Young,* 37 Ohio St.3d 249, 258, 525 N.E.2d 1363, 1373 (1988).

{¶ 21} "We do not concede, as the dissent suggests, see *post,* [495 U.S. 103, 110 S.Ct.] at 1708,[ 109 L.Ed.2d 98,] n. 5, that the statute as construed might proscribe a family friend's possession of an innocuous picture of an unclothed infant. We acknowledge (see n. 9, *supra* ) that the statute as written might reach such conduct, but as construed the statute would surely not apply because the photograph would not involve a 'lewd exhibition or graphic focus on the genitals' of the child." *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, fn. 11.

■ {¶ 22} Arguably, the United States Supreme Court's understanding of the Ohio Supreme Court's construction of R.C. 2907.323(A)(3) in *Young,* 37 Ohio St.3d 249, 525 N.E.2d 1363, is merely dictum and therefore not binding on us. But we find that understanding to be persuasive. As we understand the holding of the Ohio Supreme Court in *Young,* it is the character of the material or performance, not the purpose of the person possessing or viewing it, that determines whether it involves a lewd exhibition or a graphic focus on the genitals.

## B.  The Helios Natura Collection Videotapes

■ {¶ 23} Two of the counts upon which Kerrigan was charged and convicted involve two videotapes that are so similar in nature that we shall discuss them together. They both appear to be from the "Helios Natura Collection." Like the other videotape and the DVD forming the basis for two other counts and convictions, these videos begin with a recitation that the fall of communism has led to the end of repression in East Europe, with one result being that many in these countries are exploring naturism, which seems to be closely related to, if not equivalent to, nudism. The two Helios Natura videos appear to have been taped in an East European country, and, except for introductory and closing remarks by, or on behalf of, the producers, the voices heard in the video are speaking a language other than English, which is not known by the judges of this court, so that we do not know what is being said.

{¶ 24} Each of these two videotapes is about 55 minutes long. Other than a brief introduction and closing, both videotapes feature a large group of boys and men, of varying ages, who are all naked. In Exhibit 4, all of the persons shown are naked. The scene is in a crowded gymnasium and shows the men and boys working out on various equipment seemingly selected at random. None of the persons shown appears to be posing for, or "playing to," the camera.

{¶ 25} At one point, everyone gathers to watch what appears to be a demonstration in the techniques of wrestling, martial arts, or self-defense, with two adults, who, like everyone else, are naked, demonstrating. For this demonstration, the boys sit on the floor in front of the men, who remain standing.

{¶ 26} In the other Helios Natura videotape, Exhibit 3, which is entitled "Bare Buns and Boxing," the action takes place at a boxing gymnasium, with a boxing ring, punching bags, and other kinds of pugilistic equipment. The naked men and boys, again of assorted ages, are watching clothed boxers sparring, with a clothed referee. After a while, some of the naked observers climb into the ring and take turns boxing with boxing gloves and protective headgear but no other apparel. The latter part of the tape shows pairs of naked boys sparring in the ring, again with boxing gloves and protective headgear and a clothed referee. Many naked boys and men are observing at ringside.

{¶ 27} In neither Exhibit 3 nor Exhibit 4 do we find any graphic focus on the genitals of the men and boys shown. The genitals of the persons in the video are generally visible and no attempt has been made to edit them out of the picture, but neither is any particular attention focused on the genitals. The camera does not zoom in on, or linger upon, the genital organs. They are merely an inherent aspect of the fact that all, or, in the case of Exhibit 3, almost all, of the persons shown in the video are naked.

{¶ 28} The parties have not furnished us with any authority defining "lewd" or "lewd exhibition," but Webster's Third New International Dictionary defines "lewd" as:

{¶ 29} "1 obs  a: of, relating to, or characteristic of common and ignorant people: VULGAR b: BASE, EVIL, WICKED—used of persons and their conduct c: POOR, WORTHLESS—used of things 2 a: sexually unchaste or licentious: DISSOLUTE, LASCIVIOUS b: suggestive of or tending to moral looseness: inciting to sensual desire or imagination: INDECENT, OBSCENE, SALACIOUS * * * "

{¶ 30} In the context of the statute, we take the definitions set forth in "2," above, to be the appropriate definitions of "lewd." The two definitions set forth therein appear to be closely related, and involve the quality of appealing to, or inciting, sexual desire or imagination.

{¶ 31} It must be remembered that our analysis of the statute (see Part II–A, above) leads us to the conclusion that it is the quality of the material or performance being possessed or viewed, not the purpose of the possessor or viewer, that determines whether the material or performance involves a lewd exhibition or a graphic focus on the genitals. Bearing that in mind, we find nothing in Exhibits 3 or 4 that a reasonable finder of fact could find to be a lewd

exhibition. To be sure, the title of Exhibit 3—"Bare Buns and Boxing"—could support a reasonable inference that it is marketed to appeal to persons with a prurient interest, but the video itself does not appear to this court to involve a lewd exhibition or a graphic focus on the genitals. There are no provocative or suggestive poses, and there is no provocative or suggestive editing. If either of these videos could be said to involve a lewd exhibition or a graphic focus on the genitals, then any video depicting nude minors would have to be deemed to involve a lewd exhibition or a graphic focus on the genitals. But our analysis of *State v. Osborne*, supra, set forth in Part II–A, above, leads us to the conclusion that a requirement of a lewd exhibition or a graphic focus on the genitals has been engrafted into the statute as a separate, and narrowing, requirement for the material or performances, the possession or viewing of which constitutes a violation of R.C. 2907.323(A)(3).

{¶ 32} In conclusion, we hold that a reasonable finder of fact cannot find that Exhibit 3 or Exhibit 4 constitutes or includes a lewd exhibition or a graphic focus on the genitals. Since this is an essential element of the offense, there is insufficient evidence to support Kerrigan's convictions corresponding to these two exhibits.[1]

## C. The "After–School Break" DVD

{¶ 33} Exhibit 5 is a DVD entitled "After–School Break." It is about 49 minutes long. It comes in a DVD case with innocuous pictures from the video on the back, and the four boys starring in the video, all of whom appear to be minors, posed in a group on the front, all fully clothed. There is English printing on the back, as well as an English title on the front. The back reflects that it was produced in Ukraine in 2004, by Europa Sun Productions, with Anton Reznikov as the director. Also on the back of the DVD case is the following description:

{¶ 34} "May 9th is a very important holiday in the Ukraine. It celebrates victory at the end of The Great Patriotic War (WWII). School kids like it because on the day before, they get out early. Our four teens take advantage of this half-day vacation by having lunch at an outdoor café and then going to the *banya*. There's no better way to spend an afternoon."

{¶ 35} At the beginning of the video, in written English, there is mention of the rise of naturism in postcommunist Eastern Europe. The voices of the persons featured in the video, which consist entirely of the four boys in the starring roles except for a waitress who takes their orders at a café, all speak in a language

---

1. The five counts in the indictment are all identically worded, and the record nowhere differentiates among them or otherwise identifies which particular count corresponds to which exhibit. We do conclude, as noted in Part I, that each of exhibits 2, 3, 4, 5, and 6, constitutes the material intended to support one of the five counts in the indictment.

other than English. Because the judges of this court are not familiar with the language featured in the video, and no translation has been supplied, we do not know what is being said. As is the case with all the other videos, however, our not knowing what is being said does not appear to matter.

{¶ 36} At the beginning of the video, the four boys, who appear to be young teenagers, almost certainly under the age of 18, are warmly dressed and are walking outside. They stop to play at a sliding board and a chin-up bar. They appear to know each other and to be engaging in friendly banter and conversation.

{¶ 37} After a while, the quartet goes to an outdoor café. They look at the menu and place their orders with a waitress. She brings them some kind of beverage that looks like a fruit drink, and later a full meal, with one plate for each boy. They eat their meals and then leave. They arrive at the banya about 12½ minutes into the video and go to the locker room. They are the only persons present at the banya throughout the video. At the locker room, they each disrobe, and, naked, proceed through a door to an indoor pool. For a public pool, it is fairly small. They arrive at the pool about 14½ minutes into the video, and the next 25 minutes shows them playing in the pool. At one point, they bat an inflated ball around. From time to time, one or more of them gets out of the pool and then jumps back in, but for most of this time, they are immersed in the pool, with nothing but their heads clearly visible.

{¶ 38} They then get out of the pool and go into a communal shower. Again, they are the only persons present. As they shower, they occasionally spray each other with the detachable shower nozzles. After about four minutes in the shower, they go into the locker room, towel off, and get dressed. They then leave the banya, fully dressed, and are shown walking outside for about three and a half minutes, when the video concludes.

{¶ 39} As with Exhibits 3 and 4, we find no graphic focus on the genitals in this DVD. During the bulk of the video, when the boys are naked, their genitals are visible when they are out of the water. No attempt has been made to edit out the boys' genital organs. But neither is there any focus on the genitals. The camera does not zoom in on, or linger upon, the genitals, and, indeed, during the time when the boys are in the pool, their genitals are not visible. Nor have we seen anything in this video that could be found, by a reasonable finder of fact, to be a lewd exhibition. There are no provocative or suggestive poses.

{¶ 40} As was the case with Exhibit 3, one can reasonably infer that the "After–School Break" DVD is marketed to persons with a prurient interest in nude minor boys. Like many DVDs, it includes promotions for other DVDs. We looked at these promotional videos, since they are part of Exhibit 5, and they all involve four boys, although not the same four boys, who start off fully clothed,

disrobe to engage in some activity, and ultimately put their clothes back on. The quartets of boys are of varying ages (although the members of each set always appear to be about the same age), but all appear to be minors. The contents and format of these other videos appear to be similar to "After–School Break." There is no plot, and the conclusion appears likely, if not inescapable, that they are intended to be marketed to persons with a prurient interest in nude minor boys.

{¶ 41} Nevertheless, the test, as laid down in *State v. Young,* 37 Ohio St.3d 249, 525 N.E.2d 1363, is not how the material is promoted or marketed, but whether the material itself consists of, or includes, lewd behavior, or a graphic focus on the genitals. We conclude that there is nothing in the "After–School Break" video that constitutes a lewd exhibition or a graphic focus on the genitals. Therefore, there is insufficient evidence to sustain a conviction on this count.

### D—The "Czech Freedom I" Video.

{¶ 42} Exhibit 2 is a videotape entitled "Czech Freedom I." It is about 55 minutes long. As with the other videos, there is a reference in English, at the beginning of the video, to the liberating effects of the fall of communism in Eastern Europe and the rise of naturism. After some opening sequences that appear to preview scenes later in the video, the video begins by taking the viewer inside a drab-looking apartment building in Prague, to see the inside of a nice-looking apartment. Inside the apartment, the mother of a family of four is preparing food in anticipation of the arrival of her daughter. The mother is completely nude. In this video, there are voice-overs, in English.

{¶ 43} Soon, the daughter, Jane, arrives home from school. She is clothed upon her arrival but quickly takes off her clothes. This family apparently is nudist. Importantly, Jane's minority status is not apparent and is not disclosed. She could easily be 18 years old or older. Although she could be under the age of 18, there is nothing in the video from which a reasonable finder of fact could find, beyond reasonable doubt, that Jane is a minor.

{¶ 44} A little bit later, the son, Henry, arrives home from school. Unlike Jane, Henry is clearly a minor. He, too, strips nude shortly after arriving home. Henry and Jane, who are siblings, bat a large inflated ball back and forth.

{¶ 45} Finally, the father arrives home. He, too, takes off his clothes shortly after his arrival. The family is depicted engaging in fairly typical wholesome activities. They remain nude throughout this portion of the video, while at home in their apartment. Jane plays with a hula hoop and is good with it, unlike the other family members, who try, gamely. Although Jane uses the hula hoop well, which necessarily involves some gyration of her body, these scenes are not erotic. Also, Jane is not clearly a minor. Henry plays with the hula hoop, but these

scenes, also, are not erotic, and, in most of them, Henry has his back to the camera.

{¶ 46} Dad brings out his digital camera and starts taking pictures. The mother's pose, which is shown at one point from the point of view of the photographer, is mildly sexual. When Jane poses for him, we only see the scene from behind Jane's shoulder. Then Henry is photographed, and then all three— the mother, daughter, and son—but these scenes are not erotic at all.

{¶ 47} Next, the father and son are shown playing on, or at least using, a computer. There is nothing erotic in this scene. Then Jane is shown working out on a piece of equipment. There is no focus on her genital organ, which cannot be seen. The father and son are then shown curling some weights with their arms. Then Jane is shown curling the same weights with her arms. There is nothing sexually provocative or suggestive in these scenes.

{¶ 48} Then, a little over 17 minutes into the video, the mother, the father, and Jane go to the "Mad Max" club to join some of their naturist friends. Significantly, Henry, the only person in this video whom a reasonable finder of fact could find, beyond reasonable doubt, to be a minor, stays at home.

{¶ 49} At the Mad Max club, everyone takes off their clothes. An inflated ball is batted back and forth. The participants, an almost even mixture of men and women (there is one more man than there are women), play with a hula hoop. One woman, who, while young, is not obviously a minor, pole dances in a fairly erotic manner. Then a conga line forms, and this same woman, Natalie, shakes her breasts in a manner that could fairly be described as a lewd exhibition. Couples then dance in a traditional manner, the man's right hand holding the woman's left, the man with his other arm around the woman's waist, and the woman with her other arm at the man's upper shoulder, or around his neck. Of course, all the participants are completely nude.

{¶ 50} The atmosphere becomes progressively steamier, with all of the participants working up a sweat, and with some dancing near the end that can reasonably be deemed to constitute a lewd exhibition.

{¶ 51} In this video, we have found no graphic focus on the genitals. In the second part of the video, in the scenes at the Mad Max club, there are some scenes that a reasonable finder of fact could find to include a lewd exhibition, but no reasonable finder of fact could find, beyond reasonable doubt, that any of the persons participating in these scenes is a minor. Consequently, we conclude that there is insufficient evidence to support a conviction on this count.

### E. The Brochure

{¶ 52} Exhibit 6 is an untitled brochure, consisting of one sheet with advertising on both sides. One side advertises a video entitled "Under Palms at

the Ocean." The other side advertises four videos: "The Dalmatian," "Fun on the Pier," "Skinny Dippin' Boys," and "Colorful Life on the Adriatic." There is contact information at the bottom of the second side for the "Insider Video Club," including both a post office box and a toll-free telephone number. The brochure is in black and white. There are photographs advertising each of the videos. The photographs advertising "The Dalmatian" do not obviously depict nudity. In one of the photographs, the two boys depicted might be nude, but they are so positioned in the water that it cannot be determined. The sets of photographs advertising the other four videos all show nude boys, with their genitals visible, and one set, the set advertising "Colorful Life on the Adriatic," shows nude girls and boys, with their genital areas visible. All of the persons shown are clearly minors.

{¶ 53} In our view, at least one of the photographs featured in this brochure could be found, by a reasonable finder of fact, to involve a lewd exhibition, a graphic exhibition of the genitals, or both. In the photograph of the nude boy advertising "Skinny Dippin' Boys," the boy is posed in a manner that a reasonable finder of fact could find to be sexually provocative, involving both lewdness and an emphasis on the boy's genital organ.

{¶ 54} With respect to the count and conviction corresponding to Exhibit 6, then, we find that there is sufficient evidence to support a conviction. Nevertheless, we agree with Kerrigan that the record demonstrates a legal error on the part of the trial court that we cannot hold to be harmless.

{¶ 55} In its written verdict, the trial court, as the finder of fact, set forth the following:

{¶ 56} "The Ohio Supreme Court in *State v. Young*, 37 Ohio St.3d 249, 525 N.E.2d 1363 (1988) also addressed Section 2907.323(A)(3). It observed that 2907.323(A)(3) does not expressly limit or prohibit the state of nudity to a lude [sic] exhibition or a graphic focus on the genitals. Further, they observed that they are aware that nudity, without more, is protected expression under the First Amendment even where the subject depicted is a child. However, the Court reasoned that the legislature provided specific exceptions and consequently designated when such nudity involving a minor could be a proper purpose. The only conduct prohibited by the statute is conduct which is not morally innocent, that being the possession or viewing of the described material for prurient purposes.

{¶ 57} "The materials in question, which are the exhibits before the Court, purport to show numerous individuals both adults and minors in a state of nudity engaging in purportedly everyday activities such as swimming, working out, boxing, and family activities. While the materials themselves do not demonstrate

a 'lude [sic] exhibition' nor do they necessarily place a 'graphic focus on the genitals,' the length of the videos, together with the activities demonstrated by the minors, would have no other purpose other than to call to the attention of the viewer the nudity of the minors resulting in the viewer's continuous exposure to the minors' genitals.

{¶ 58} "The activities demonstrated by the minors, while not specifically focusing on the genitals, are apparently intended to do so. Most videos would not contain 15 minutes or more of minors boxing; working out in a gym on numerous pieces of equipment in numerous positions, or swimming in an indoor pool if the minors were not nude. *It is obviously the intent of the exhibits to call attention to the nudity of the minors.* These exhibits do not fall within the proper purposes exception to Section 2907.323(A)(3)(a) and (b), and as a result, are prohibited in Ohio by statute." (Emphasis added.)

{¶ 59} In our view, the portions of the trial court's verdict quoted above demonstrate an error of law. The trial court evidently misapprehended the construction of R.C. 2907.323(A) required by *State v. Young*, 37 Ohio St.3d 249, 525 N.E.2d 1363. In our view, the proper test is not the intent of the materials at all. As we have noted, some of these materials, at least, may well have been intended to be marketed to persons with a prurient interest in nude minor boys. The test is whether the materials, themselves, consist of, or include, lewd exhibitions or a graphic focus on the genitals. And this is different from merely calling attention to the nudity of the minors. The whole point of the materials may be to point out the nudism movement in Eastern Europe. By itself, this would not violate the statute, even if nude minors are depicted, so long as there are no lewd exhibitions or graphic focusing on the genitals.

{¶ 60} Although we have concluded, with respect to Exhibit 6, that there is sufficient evidence upon which a reasonable finder of fact could predicate a conviction, we cannot say that the error of law demonstrated in the record is harmless. In a bench trial, the trial judge takes the place of the jury as the finder of fact. It would be no more appropriate for us to usurp the role of the trial judge as the finder of fact in a bench trial than it would be for us to usurp the role of the jury in a trial to the jury. In this respect, the situation in this appeal is similar to an appeal predicated upon an error in an instruction of law given to a jury. Once we have determined that the trial court erred, to the prejudice of the defendant, in its instruction to the jury by misstating an element of the offense in a manner that makes it easier to find the defendant guilty, we may not disregard that error on the theory that the jury, having been correctly instructed, would have found the defendant guilty anyway. That determination is for the finder of fact, not for this court.

{¶ 61} For this reason, the conviction corresponding to Exhibit 6 will be reversed, and this cause will be remanded for reconsideration of the trial court's verdict as to that count, after correctly applying the law.

### III

{¶ 62} Kerrigan's second assignment of error is as follows:

{¶ 63} "Defendant-appellant was denied effective assistance of counsel as granted by the Sixth Amendment to the Constitution of the United States of America."

{¶ 64} Kerrigan contends that his trial counsel was ineffective for having failed to move for a judgment of acquittal following the close of the state's case. Kerrigan submitted no evidence in his behalf.

{¶ 65} We find Kerrigan's argument difficult to follow, since the trial court stated, after all the evidence had been submitted:

{¶ 66} "Then just for purposes of the record, we'll assume you had a Rule 29 motion, I'll overrule that motion so that we have something on the record."

{¶ 67} In any event, as to four of the five counts upon which Kerrigan was convicted, this assignment of error is obviously moot, since we are not only reversing those convictions, we are taking the further step of discharging him as to those counts.

{¶ 68} We find the application of this assignment of error to the fifth count, corresponding to Exhibit 6, to be moot as well. In concluding that there is evidence in the record from which a reasonable finder of fact could find Kerrigan guilty as to that count, we are necessarily concluding that had Kerrigan's trial attorney made a motion for a judgment of acquittal (assuming, for purposes of analysis, that he did not in fact do so), the trial court would properly have denied it.

{¶ 69} Kerrigan's second assignment of error is overruled.

### IV

{¶ 70} Kerrigan's first assignment of error having been sustained, his second assignment of error having been overruled, and for the reasons set forth in Part II, Kerrigan's convictions upon the counts corresponding to Exhibits 2, 3, 4 and 5 are reversed, and he is ordered discharged as to those offenses; his conviction upon the count corresponding to Exhibit 6 is reversed, and this cause is remanded for reconsideration of the trial court's verdict on that count, after correctly applying the law. Because we have found no error in the proceedings before the verdict, the trial court is not required to retry this case, although the

trial court is permitted to do so if it should find it necessary or desirable to retry the case.

Judgment reversed in part
and reversed and remanded in part.

BROGAN, J., concurs.

DONOVAN, J., dissents.

DONOVAN, J., dissenting.

{¶ 71} I disagree. A determination of whether the disputed materials violate the statute must be based upon their overall content. The trial judge correctly found that based upon their overall content, they do violate R.C. 2907.32(A)(3).

{¶ 72} The videotapes and brochure contain clear images of the pubic area and buttocks of children. Black's Law Dictionary (8th Ed.2004) 927 defines "lewd" as obscene or indecent; tending to moral impurity or wantonness. Viewed in the light most favorable to the state, the images constitute a lewd exhibition of nudity. Certainly, none of these materials can be characterized as possessed for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose as set forth in R.C. 2907.32(A)(3).

{¶ 73} I believe the majority misconstrues *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363, and engrafts a more narrow reading of the lewd exhibition test than engrafted by the Ohio Supreme Court and deemed constitutional by the United States Supreme Court. The majority concludes that the "context" of the Ohio Supreme Court's opinion in *Young* indicates that the term "nudity" refers to a lewd exhibition of the genitals. The effect of this interpretation morphs the statute into protecting children only when the material involves genitalia; i.e., lewd exhibition of genitalia or graphic focus on genitalia. Such a narrow reading would never protect children where the nudity displayed is a lewd exhibition of female breasts or the buttocks of a child, male or female.

{¶ 74} As noted by Justices Brennan, Marshall, and Stevens in their dissent in *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98. The Ohio Supreme Court did not say, "[W]here such nudity constitutes a lewd exhibition of or involves a graphic focus on the genitals." The noun "exhibition" does not take as a modifier the preposition "on," and the court's repeated reference to the "prohibited state of nudity" as a lewd exhibition or a graphic focus on the genitals, *Young,* 37 Ohio St.3d 249, 251, 525 N.E.2d 1363, leaves no doubt that its choice of words was deliberate. The Ohio court clearly meant the "lewd exhibition" standard to pertain only to nudity and not to displays of the genitals. *Osborne,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, fn. 4.

{¶ 75} Further, the majority concludes that these materials are merely "naturist" or nudist, but concedes that at least one "After School Break" is likely intended to be marketed to persons with a prurient interest in nude boys. I would conclude that all of the materials are so marketed. Nevertheless, the majority contends that it is not relevant how the material is promoted or marketed. This conclusion ignores the United States Supreme Court's recognition of the significance of the exceptions delineated in the Ohio statute that narrows significantly the prohibited conduct by limiting it to "conduct which is not morally innocent, i.e., the possession or viewing of the described material for prurient purposes." Id. at fn. 10.

{¶ 76} Reading the trial court's decision in its entirety and giving the state latitude in protecting children from nude visual depictions, I would affirm the convictions of Kerrigan on all counts.