[Cite as *State v. Videen*, 2013-Ohio-1364.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                      :
                                   :       Appellate Case No. 25183
            Plaintiff-Appellee     :
                                   :       Trial Court Case No. 11-CR-3378
v.                                 :
                                   :
LANCE G. VIDEEN                    :       (Criminal Appeal from
                                   :        Common Pleas Court)
            Defendant-Appellant    :
                                   :

· · · · · · · · · · ·

O P I N I O N

Rendered on the 5th day of April, 2013.

· · · · · · · · · · ·

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
            Attorney for Plaintiff-Appellee

BRENT E. RAMBO, Atty. Reg. #0076969, Flanagan, Lieberman, Hoffman & Swaim, 15
West Fourth Street, Suite 250, Dayton, Ohio 45402
            Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, P.J.

{¶ 1}   Defendant-appellant Lance G. Videen appeals from his conviction and

sentence, following a trial to the bench, upon two counts of Illegal Use of a Minor in

Nudity-Oriented Material or Performance, in violation of R.C. 2907.323(A)(3). Videen contends that the trial court erred by overruling his motion to suppress evidence obtained from the search of his laptop computer hard drive. Although Videen consented in writing to the search, he contends that his will was overborne during custodial interrogation, as a result of which his consent to the search was not knowing and voluntary. We conclude that the record, which includes an audiovisual recording of the custodial interrogation, does not support Videen's claim.

{¶ 2} Videen also contends that the trial court erred in overruling his motion for a judgment of acquittal, under Crim.R. 29. Specifically, he contends that the photographs forming the basis for the charges, while constituting photographs of nude underage boys, do not satisfy the requirement that the "nudity constitutes a lewd exhibition or involves a graphic focus on the genitals," which was engrafted upon the statute by *State v. Young*, 37 Ohio St.3d 249, 525 N.E.2d 1363 (1988), paragraph one of syllabus. We agree in part. One of the two photographs, Exhibit 6 in the trial court, satisfies the requirement beyond a reasonable doubt, based upon the prominence of the boy's nude buttocks and his provocative stance. The other photograph, which features another, nude underage boy in a bathroom, turned sideways, but slightly away from the camera, does not satisfy the requirement beyond a reasonable doubt.

{¶ 3} Videen also claims that there is insufficient proof that the images stored on his computer were of real, as opposed to virtual, children. We disagree. The images appear to be photographs of real children, and the finder of fact is competent to make that determination. *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 54.

{¶ 4} Next, Videen contends that the trial court, in its questioning of the State's

witness (after questioning by both parties), crossed the line and became less than fair and impartial, by supplying, through its questioning, evidence on the element of recklessness. Videen contends that the State had presented no evidence that he recklessly possessed or viewed the photographs stored on his laptop computer hard drive. We disagree. From both Videen's custodial interrogation, the audiovisual record of which had been received in evidence, and the direct testimony of the State's witness, it was clear that Videen knowingly possessed the photographs. The trial court's questions merely clarified evidence that had already been received concerning the files in which the photographs were stored on the hard drive, Videen's familiarity with the files, and the fact that the file names were originated by him.

**{¶ 5}** Finally, Videen contends that the indictment is defective, because it fails to allege that the photographs forming the basis for the indictment constitute a lewd depiction or involve a graphic focus on the genitals. The indictment charged both offenses in the words of the statute. This is sufficient. *State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2011-Ohio-2976, ¶ 27, followed.

**{¶ 6}** Accordingly, Videen's conviction based upon Exhibit 5 is Reversed, his conviction based upon Exhibit 6 is Affirmed, and this cause is Remanded for re-sentencing, the trial court having imposed a single period of community control sanctions for both offenses.

## I. Videen Is Arrested for Disorderly Conduct, Is Interrogated, and Gives Written Consent for a Search of his Laptop Computer

{¶ 7}    Videen was arrested by a Riverside police officer for Disorderly Conduct, as a result of an offer he had made in a park to an eleven-year-old boy to cause the boy's penis to grow larger.    In a room at the Riverside police station, Videen was interrogated by Sergeant Harold Jones.    The entirety of the interrogation was the subject of an audiovisual recording, which was admitted in evidence both at a suppression hearing and at trial.

{¶ 8}    Jones reviewed with Videen a written form reciting, and waiving, Videen's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694   (1966). Videen expressed concern about the phrasing "anything you say can and will be used against you in [sic] court of law."    Videen said he understood the concept, but that this part of the form was phrased badly.    Jones agreed with him.    Videen said that he understood everything else in the form.

{¶ 9}    Although Videen said he had no problem with the form, he kept failing to sign it, while talking about other things.    More than once, Jones told Videen that he could not continue to talk with Videen unless Videen signed the consent.    Jones told Videen that he could decline to talk, in which event, Jones would turn him over to other police officers for transportation to jail.    When Videen complained that he was being threatened with going to jail unless he signed the *Miranda* waiver, Jones clarified that Videen was going to go to jail on the Disorderly Conduct charge in any event, but that if he wanted to talk with Jones first, he needed to sign the waiver.

{¶ 10}    The waiver form specified that Videen was being interviewed "in regards to the crime(s) of computer crimes possible porn issues."    Videen complained that this was inaccurate, since he had only been arrested for Disorderly Conduct.    Jones responded by telling Videen that "you may be in deeper water than you think."    After some further

discussion, Jones reiterated that he could not continue talking to Videen without Videen's signing the waiver form. Finally, when Jones said he would have to leave unless Videen signed the waiver, Videen signed it. This was almost seven minutes after the *Miranda* waiver was first presented to Videen. As Videen signed the waiver, he complained that Jones was being "pushy," and was not being fair to him.

{¶ 11} After talking with Videen for a while, Jones told Videen that he thought Videen liked little boys, and had child porn on his computer. Jones told Videen that unless Videen could persuade him otherwise, Jones would proceed with child pornography charges. Videen asked Jones how Videen could persuade Jones otherwise. Jones replied that Videen could let Jones see Videen's laptop computer.

{¶ 12} Videen consented, in writing, to the search of his laptop computer. Jones told Videen that he was not required to consent. Videen left with a police officer to go get his computer, and was then returned to the interrogation room.

{¶ 13} Videen gave Jones his password, and then began showing Jones images he had on the computer hard drive. Later, with Videen's permission, Jones began searching the hard drive, in Videen's presence.

{¶ 14} Videen explained that "chaser," a file on the hard drive, was a nickname he had ascribed to himself after he had chased a rabbit. He also explained the derivation of the filename "new slaves," explaining that "slaves" were subjects for hypnotic therapy that he administered, at the request of the children's parents.

## II. The Course of Proceedings

{¶ 15} Videen was charged by indictment with two counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance, in violation of R.C. 2907.323(A)(3). He moved to suppress the statements given during the custodial interrogation, as well as the evidence obtained as a result of Videen's consent to search. He contended that both were the product of coercion. Following a hearing, the trial court overruled the motion. Videen was represented at the suppression hearing by an experienced criminal defense attorney, Marshall Lachman.

{¶ 16} Videen waived a jury and elected to be tried by the court. He also elected to represent himself, but Marshall Lachman was assigned as standby counsel, to assist Videen if and when Videen should require assistance.

{¶ 17} At trial, the State presented the testimony of Sergeant Jones. Videen cross-examined Jones. Then the trial court asked Jones some questions. Videen did not testify, and did not present evidence in his own behalf, but, with some assistance from his standby counsel, he did move the trial court for a judgment of acquittal, under Crim.R. 29. The trial court denied the motion for acquittal, heard closing arguments, and took the matter under advisement.

{¶ 18} Six days after submission of the case, the trial court rendered its verdict, finding Videen guilty on both counts. Later, Videen was sentenced to community control sanctions for a period not to exceed five years, and was classified as a Tier I sex offender. From his conviction and sentence, Videen appeals.

### III. Videen's Consent to Search Was Voluntary

{¶ 19} Videen's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 20} Videen appears to have abandoned, on appeal, his contention that the statements he made to Sergeant Jones should have been suppressed. He argues that the evidence retrieved from his computer hard drive – which are the two photographs forming the basis for the charges – should have been suppressed, because his consent was coerced.

{¶ 21} To begin with, Videen contends that his consent to speak with Jones at all was coerced, because Videen was told he would go to jail if he did not agree to speak with Jones. But before Videen consented to speak to Jones, Jones clarified that Videen was going to jail on the Disorderly Conduct charge, whether or not he agreed to speak to Jones.

{¶ 22} Videen next refers to Jones having told him "I have information that's gonna put you in deeper water than you think you're in, so I thought I would talk to you about it before I just proceed on that." This comment was responsive to Videen's having complained that the *Miranda* waiver form incorrectly identified the subjects of the interview as computer crimes and possible porn issues, when it should have specified Disorderly Conduct as the only subject of the interview. In this context, Jones was just clarifying for Videen that the subject of the interview, if Videen were to consent to it, would not be limited to Disorderly Conduct. And again, Jones repeatedly told Videen that he did not have to consent to the interview, and that unless he did consent, Jones would have to stop listening to Videen's long-winded explanations of how he was just trying to help people, using hypnotic therapy.

{¶ 23} Next, Videen refers to Jones having told him, "You violated the law by using others' Wi-Fi, whether or not we push that depends on how much truth you give me." From the record, this statement appears to have been true. Videen ultimately co-operated by

consenting to the interview, and there is nothing in the record to reflect that he was charged in connection with the use of others' Wi-Fi connections. Thus, to the extent that this comment by Jones may have represented an implied promise, it appears to have been kept. A suggestion that co-operation may result in more lenient treatment is neither misleading nor unduly coercive. *State v. Stringham*, 2d Dist. Miami No. 2002-CA-9, 2003-Ohio-1100, ¶ 16. That is especially so when the implied promise is kept, as here.

{¶ 24} Next, Videen refers to Jones having told him, after he had consented to the interview, "I think you like little boys and that you have child porn on your computer. And if it turns out that way, you're going to the penitentiary." Jones's assertion that he thought Videen had child pornography on his computer appears to have been accurate, since it would explain why Jones wanted to see what was on Videen's computer. A defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is. *Id.* Of course, if it "turned out" that Videen did, in fact, have child pornography on his computer (and had the requisite scienter, which would be implied by his "liking little boys") then Videen would, in fact, go to the penitentiary.

{¶ 25} We have listened to the entire audiovisual recording of Videen's interview by Jones. We conclude that the trial court was correct in finding that Videen's will was not overborne, either in his decision to consent to the interview, or, later, in his decision to consent to the search of his computer hard drive.

{¶ 26} Videen's First Assignment of Error is overruled.


**IV.    One of the Photographs Satisfies the "Lewd Depiction"**

**Requirement; the Other Does Not**

**{¶ 27}** Videen's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION.

**{¶ 28}** A motion for a judgment of acquittal tests whether the evidence, when viewed in a light most favorable to the State, would permit a reasonable mind to find that all essential elements of the crime charged have been proven beyond reasonable doubt. *State v. Bridgeman*, 55 Ohio St.2d 261, 263, 381 N.E.2d 184 (1978).

**{¶ 29}** R.C. 2907.323(A)(3) provides that no person shall "possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity," unless one of two exceptions apply. Videen does not assert that either exception applies in this case. The statute has been construed "as reaching only nudity that either constitutes a lewd exhibition or involves a graphic focus on the genitals." *State v. Young*, 37 Ohio St.3d 249, 251-252, 525 N.E.2d 1363 (1988).

**{¶ 30}** In both Exhibits 5 and 6, the photographs forming the basis for the two counts of which Videen was convicted, the subject is facing away from the camera. In Exhibit 6, the subject has his back to the camera. In Exhibit 5, the subject is turned slightly away from the camera. In neither photograph do the subject's genital organs appear. The issue, then, is whether a reasonable mind could find either photograph to constitute a lewd depiction.

**{¶ 31}** In *State v. Kerrigan*, 168 Ohio App.3d 455, 2006-Ohio-4279, 860 N.E.2d 816, ¶ 16 (2d Dist.), we held that "it is the character of the material or performance, not the purpose of the person possessing or viewing it, that determines whether it involves a lewd depiction or

a graphic focus on the genitals."  In that opinion, we concluded that the appropriate dictionary definition of "lewd," for the purposes of this statute, is: "a: sexually unchaste or licentious: DISSOLUTE, LASCIVIOUS b: suggestive of or tending to moral looseness: inciting to sensual desire or imagination: INDECENT, OBSCENE, SALACIOUS * * * ."  *Id*. at ¶ 30, quoting from Webster's Third New International Dictionary.  We then analyzed the materials forming the basis for the charges in that case.  In performing the analysis, we considered whether there were provocative or suggestive poses or editing.  *Id.* at 31.

{¶ 32}  Performing that analysis in the case before us, we reach different conclusions concerning Exhibits 5 and 6.  The subject in Exhibit 6 is posed outdoors, next to three tree trunks, with his arms extended above him, his hands touching two of the tree trunks.  He is looking back over his left shoulder at the camera.  His legs are spread, and his buttocks are arched upward.  From the setting and the pose, we conclude that a reasonable mind could find, beyond reasonable doubt, that this photograph is intrinsically unchaste or licentious, inciting to sensual desire or imagination.

{¶ 33}  The subject in Exhibit 5 is posed in a bathroom.  His right shoulder is pointed toward the camera, but his lower body is tilted slightly away from the camera.  He is not looking at the camera, but at what appears to be an electronic device he is holding in his left hand, just inches away from his face.  Although his legs are not touching one another, they are not far apart.  His buttocks are not arched.  Based, again, on the setting and the pose, we conclude that a reasonable mind could not find, beyond reasonable doubt, that this photograph is intrinsically unchaste or licentious, inciting to sensual desire or imagination.

{¶ 34}  We conclude, therefore, that the trial court erred in overruling Videen's

motion for a judgment of acquittal on the count corresponding to Exhibit 5, but did not err in overruling his motion for acquittal on the count corresponding to Exhibit 6.

**{¶ 35}** Videen also argues, in support of this assignment of error, that the State failed to prove that Exhibits 5 and 6 were images of actual children, as opposed to virtual images. We disagree. Both exhibits appear to be photographs of actual children, and the Supreme Court of Ohio has held that a finder of fact is capable of distinguishing between real and virtual images, without expert assistance. *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 54. Furthermore, Videen's statements to Detective Jones, the audiovisual recording of which was admitted in evidence, supports a conclusion that Exhibit 5 was a photograph of a real child, whom Videen was purporting to treat with hypnotic therapy. Exhibit 6, on the other hand, has the internet address "WWW.BD-COMPANY.COM" superimposed in stylistic lettering at the bottom right of the image, suggesting that it was obtained from a web site.

**{¶ 36}** Videen's Second Assignment of Error is sustained with respect to his conviction based on Exhibit 5, and overruled with respect to his conviction based on Exhibit 6.

## V. The Trial Court Did Not Abandon its Neutral Role
### in Questioning Detective Jones

**{¶ 37}** Videen's Third Assignment of Error is as follows:

THE TRIAL COURT IMPROPERLY SUPPLEMENTED THE RECORD IN AREAS WHERE THE STATE FELL SHORT OF ITS BURDEN.

{¶ 38}   After both parties had finished questioning Detective Jones, the only witness at the trial, the trial court asked some questions:

THE COURT: All right.   Sergeant Jones, I do have a question or two and bear with me.   I just want to make sure I understand your testimony about one issue.   And that is this.   As I understand it, Mr. Videen indicated that he created the folder known as chaser, correct?

THE WITNESS: Yes, Your Honor.

THE COURT: And then you testified that there were a number of subfolders that are connected to chaser, is that correct?

THE WITNESS: Chaser was his user name, yes, sir.

THE COURT: All right.   Chaser is his user name.   Then these subfolders that you made reference to, is there any way to determine who created those folders?

THE WITNESS: Mr. Videen would have had to because they were labeled with specific names.   Now, there are some folders on every computer like the word desktop.   Using – I don't know where it went – the same note, desktop is going to be on every computer.

THE COURT: Right.

THE WITNESS: But underneath that, slaves, new slaves, et cetera, that would be something that a human being would have to intervene and create.   That's not part of an operating system.

THE COURT: And those subfolders as you have referred to them, they were all named in such a way that they were created by someone?

THE WITNESS: A human being, yes, sir. Yeah, the computer would not have named anything slave.

THE COURT: All right.

THE WITNESS: And in fact, sir, I questioned him on that and he said he had been in charge of it and he had done all the work and maintained custody of it.

THE COURT: And how are items then placed into a particular subfolder?

THE WITNESS: You either save them there or move them there. In other words, if someone presents you a picture of a car, you say I like this picture, I'm going to save a copy, I will put it in the folder, cars. And – or you just move it there, whichever one you so desire to do.

THE COURT: So then with some type of human manipulation to move the image into a subfolder?

THE WITNESS: Yes. Or you configure the computer manually that anything you save is to go to that folder. Either way, it requires human intervention.

THE COURT: Now, the photos that you reviewed with Mr. Videen on the 28th of August at the Riverside Police Department as part of the interview that – which has been depicted, are any of those photos one of the – one or both of the charged photographs?

THE WITNESS: Yes, sir.

THE COURT: Which ones?

THE WITNESS: Both of them. I believe 1 and 2 I think they're labeled.

MS. SLUK [representing the State]: I think it's 5.

THE WITNESS: I would have to see them.   I don't remember.

MS. SLUK: I'll give you the photos and you can answer the question.

THE WITNESS: No, sir.   This one.   This is where I stopped and said – I thought there was two.   This is one.   This is a separate photograph.   And I believe he showed me this one eventually.   But this is the one that I stopped and said we want a warrant.

MS. SLUK: Can you refer to the number?

THE WITNESS: Number 1.   I'm sorry.

MS. SLUK: No.

THE WITNESS: I'm sorry.   State's Exhibit 5 –

MS. SLUK: Okay.

THE WITNESS:   – is the actual number.

MS. SLUK: And so which did you – sorry.

THE COURT: No.   That's all right.   And so State's Exhibit 5, that was again one of the photos that you reviewed with Mr. Videen during the course of the August 28th interview?

THE WITNESS: Correct.   In my first contact with him I saw this.

THE COURT: And again just so the record is clear on this, how was that particular photograph brought to your attention?

THE WITNESS: By doing a search for pictures.   I said show me all your pictures.   And then I just pointed at four or five and said let's look at this one and this one.   This came up and I believe this is where we stopped.

THE COURT: All right. When that particular photograph came up, was there any reaction from Mr. Videen regarding his knowledge or lack thereof that that particular photograph was part of the array of photographs that he had saved – or had been saved?

THE WITNESS: He did not deny it. He talked about several photographs. And he named ages that they could be 11, 12, 13. And named specifically under 15. But he did not say, hey, that's not mine.

**{¶ 39}** The offenses of which Videen was convicted require a mental culpability state of recklessness. That is, the defendant must have been reckless in possessing or viewing the proscribed material. Videen contends that the State had failed to prove recklessness, and the proof of recklessness was only supplied by the trial court's intervention in examining Detective Jones.

**{¶ 40}** As the State points out, it had already presented evidence, in the form of the testimony of Detective Jones, on the element of recklessness. It is clear from the audiovisual recording of Jones's interrogation of Videen, which was received in evidence, that Jones obtained Videen's password to access the files on Videen's laptop hard drive. In his direct testimony, Jones said Exhibits 5 and 6 were pictures that Jones viewed with Videen during the interview. Jones further testified that the pictures were in the files "new slaves" and "hung curved nine." It is unclear from Jones's testimony whether these files were independent, or whether one was a subfile of the other. But in the interview, Videen acknowledged that these were both file names of his creation. He explained what he meant by "slaves."

**{¶ 41}** The final question and response in the State's direct examination of Jones was

as follows:

> Q. Okay. And so these were names that he would have given those folders?
>
> A. Yes, ma'am. He named those.

{¶ 42} In view of the preceding, there was evidence in the record, before the trial court's interrogation of Detective Jones, from which a reasonable finder of fact could conclude, beyond reasonable doubt, that Videen was aware that the pictures constituting Exhibits 5 and 6 were residing on his computer, and that he saved them in the files where they resided on his laptop hard drive.

{¶ 43} The trial court, which may not have been especially computer savvy, was the finder of fact. It is to be commended, not condemned, for having taken steps, through its questioning, to make sure that it understood the ramifications of the charged photographs having been saved to files residing on Videen's laptop hard drive. From the direct testimony and the audiovisual recording of Videen's interview by Jones, it would have been reasonable for the trial court to have found that Videen knowingly caused the charged photographs to have been saved on his laptop's hard drive. But the trial court, in an abundance of caution, wanted to make sure that it understood the testimony and its ramifications.

{¶ 44} Videen's Third Assignment of Error is overruled.

## VI. The Indictment, Having Charged the Offenses
## in the Language of the Statute, Is Not Defective

{¶ 45} Videen's Fourth Assignment of Error is as follows:

THE INDICTMENTS THEMSELVES WERE CONSTITUTIONALLY

DEFECTIVE.

{¶ 46}  Videen contends that both counts of the indictment are defective, because neither includes an allegation of lewdness or graphic focus on the genitals.   The requirement of lewdness or graphic focus on the genitals has been engrafted on the definition of "state of nudity," as used in R.C. 2907.323(A)(3), by *State v. Young, supra*.

{¶ 47}  We rejected this exact argument in *State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2011-Ohio-2976, at ¶ 27, holding that because the judicial construction placed on the element of "state of nudity" is not a separate element, but merely defines that element as it is set forth in R.C. 2907.323(A)(1) and (A)(3), an indictment charging an offense under either provision of the statute is sufficient if it charges the offense using the words of the statute.

{¶ 48}  The indictment in the case before us charges the offenses using the words of the statute.   Therefore, following *State v. Sullivan*, the indictment is not defective.

{¶ 49}  Videen's Fourth Assignment of Error is overruled.


## VII.   Conclusion

{¶ 50}  Videen's Second Assignment of Error having been sustained as to that conviction corresponding to Exhibit 5, and having been overruled as to that conviction corresponding to Exhibit 6, and all of his other assignments of error having been overruled, his conviction corresponding to Exhibit 5 is Reversed and Vacated; his conviction corresponding to Exhibit 6 is Affirmed; and this cause is Remanded for re-sentencing.[1]

---

[1] Videen was sentenced to community control sanctions for both convictions.    The trial court has discretion in determining what specific community control sanctions to impose.    Accordingly, the trial court might impose different community control sanctions in view of the fact that only one of Videen's convictions has survived appeal.

. . . . . . . . . . . . .

FROELICH, J., concurs.

HALL, J., concurring in part and dissenting in part:

{¶ 51}   I agree with all of the conclusions of the majority except one.

{¶ 52}   Regarding the photograph introduced as Exhibit 5, the precise question is whether a reasonable mind could find this photo intrinsically unchaste or licentious, inciting to sensual desire or imagination. I note that in addition to the two photos that are the basis of the indictment, several other photographs from the defendant's computer were introduced, as Evid. R. 404(B) relevant to the defendant's mens rea, most of which show prepubescent boys with swimming attire in apparent various states of sexual  arousal. That evidence convinces me that in the defendant's view of Exhibit 5, it too is intrinsically unchaste or licentious, inciting to sensual desire or imagination.

{¶ 53}   In addition, the trial court specifically found the two pictures in this case to be lewd after application of the appropriate case law. I cannot say that interpretation is unreasonable.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Brent E. Rambo
Hon. Michael Tucker