[Cite as *State v. Sullivan*, 2011-Ohio-2976.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

STATE OF OHIO                                          :

                                      :          Appellate Case No. 23948

          Plaintiff-Appellee                          :

                                        :          Trial Court Case No. 09-CR-667

v.                                                    :

                                        :          (Criminal Appeal from

TERRENCE S. SULLIVAN          :    Common Pleas Court)

                                        :

          Defendant-Appellant               :

                                        :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 17th day of June, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0071560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ROBERT E. SEARFOSS, III, 321 North Main Street, Bowling Green, Ohio 43402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

BROGAN, J.

{¶ 1} Terrence Sullivan appeals from his conviction in the Montgomery County Common Pleas Court of one count of pandering obscenity involving a minor, one count of pandering sexually oriented matter involving a minor, one count of endangering children, and two counts of illegal use of a minor in nudity oriented material or performance. Sullivan was

convicted after a jury trial and was sentenced to twenty-five years in prison.

{¶ 2}   Sullivan's indictment arose out of his relationship with A.K., age sixteen. Multiple nude images of A.K. were found on an image storing device called a flash card that belonged to Sullivan. The images were discovered by Matthew McDavid, a friend of A.K.'s brother, when he was using Sullivan's laptop computer that Sullivan stored at A.K.'s home. Sullivan had previously lived with A.K.'s family when he was involved in a relationship with A.K.'s mother.

{¶ 3}   The flash card also contained a video showing A.K. masturbating.  A.K. testified that Sullivan had taken nude photographs of her which she believed Sullivan subsequently sent to the lead singer of a music group she was interested in called Tokio Hotel.  A.K. did not remember when the video was created and could not recall whether Sullivan had any role in its creation.   Sullivan admitted to Detective Alan Meade of the Englewood Police Department that he took nude photographs of A.K.   Sullivan denied producing the video, but admitted stealing the video.

{¶ 4}   Sullivan told Meade that the nude photographs he took of A.K. were "tasteful photos."   (Tr. 346, 402.)   The photographs were all taken the same day.   They included topless depictions of A.K. on her bed and fully nude photographs of her with her legs spread exposing her vagina.   (Tr. 291-300.)   There were 141 images on the flash card with 91 images containing photos of A.K. in some state of nudity or engaged in sexual conduct.   (Tr. 263.)

{¶ 5}   In his first assignment of error, Sullivan contends the trial court erred in denying his motion to dismiss counts four and five of the indictment.   He contends these

counts should have been dismissed because the indictment did not allege that the minor's "state of nudity" constituted "a lewd exhibition or involved a graphic focus on the genitals."

{¶ 6}  In support of his assignment, Sullivan cites the Ohio Supreme Court's case of *State v. Young* (1988), 37 Ohio St.3d 249.  Young challenged R.C. 2907.323(A)(3) because he claimed the statute violated the constitutional prohibition against vagueness and overbreadth.  R.C. 2907.323(A)(3) provides as follows:

{¶ 7}  "(A) No person shall do any of the following:

{¶ 8}  " * * *

{¶ 9}  "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a **state of nudity**, unless one of the following applies:

{¶ 10} "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

{¶ 11} "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a **state of nudity** and to the manner in which the material or performance is used or transferred."  (Emphasis added.)

{¶ 12} In support of his assignment, Young contended that the statute was overbroad because it swept within its ambit morally innocent states of nudity as well as lewd exhibitions.  Justice Douglas disagreed with Young's argument.  He wrote at pages 251 and 252 of the

court's opinion:

{¶ 13} "It is true that R.C. 2907.323(A)(3) does not expressly limit the prohibited state of nudity to a lewd exhibition or a graphic focus on the genitals.  Furthermore, we are aware that ' * * * nudity, without more is protected expression * * *,' even where the subject depicted is a child.  *New York v. Ferber* (1982), 458 U.S. 747, 765, fn. 18.  However, when the 'proper purposes' exceptions set forth in R.C. 2907.323(A)(3)(a) and (b) are considered, the scope of the prohibited conduct narrows significantly.  The clear purpose of these exceptions, quoted *supra*, is to sanction the possession or viewing of material depicting nude minors where that conduct is morally innocent.  Thus, the only conduct prohibited by the statute is conduct which is *not* morally innocent, *i.e.*, the possession or viewing of the described material for prurient purposes.  So construed, the statute's proscription is not so broad as to outlaw all depictions of minors in a state of nudity, but rather only those depictions which constitute child pornography.

{¶ 14} "In the area of child pornography, the United States Supreme Court has directed that '[a]s with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law, as written *or authoritatively construed.*; (Emphasis added.)  *Ferber, supra*, at 764.  As we construe it today, R.C. 2907.323(A)(3) prohibits the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged."

{¶ 15} In *State v. Graves*, 184 Ohio App.3d 39, 2009-Ohio-974, the Ross County

Court of Appeals held the counts in an indictment that alleged use of a minor in nudity-oriented material, but failed to include language that nudity was a lewd exhibition or a graphic focus on the genitals, failed to set forth a punishable offense. See also, *State v. Moss* (April 14, 2000), Hamilton App. No. C-990631.

{¶ 16} In *State v. O'Connor*, Butler App. No. CA2001-08-195, 2002-Ohio-4122, the Butler County Court of Appeals rejected the appellant's claim that the trial court erred in convicting him of six counts of violating R.C. 2907.323(A)(1) because the indictment failed to allege that the nudity involved lewdness or graphic focus on the genitals. In explaining its decision, the court of appeals noted that *State v. Young*, supra, limited the operation of R.C. 2907.323(A) to nudity that involves lewdness or graphic focus on the genitals to avoid penalizing the viewing or possessing of innocuous photos of naked children, thereby allowing the statute to survive constitutional scrutiny. *O'Connor*, at ¶29. However, the *O'Connor* court specifically rejected the notion that the Ohio Supreme Court "judicially engrafted" an element onto R.C. 2907.323, as only the legislature has the power to enact additional elements to the offense. *O'Connor*, at ¶30, citing R.C. 2901.03(A). In short, the court in *O'Connor* held the *Young* and *Osborne* cases do not "alter the elements of R.C. 2907.323(A)(1)." *O'Connor*, at ¶31.

{¶ 17} Crim.R. 7(B) provides in pertinent part that the indictment shall contain a statement that may be in the words of the applicable section of the statute, provided the words of the statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged.

{¶ 18} The State urges us to reject the rationale of *Graves* and to hold that the

indictment charging Sullivan with violations of R.C. 2907.323(A)(1) and (A)(3) is sufficient if the indictment tracks the language of the statute. The State argues that while lewdness or graphic focus on the genitals is part of the definition of "state of nudity," it is not a **separate** element of the offense that must be alleged in the indictment.

{¶ 19} In *State v. Kerrigan*, 168 Ohio App.3d 455, 2006-Ohio-4279, we held that lewd exhibition or a graphic focus on the genitals is an essential element of the offense of R.C. 2907.323(A). The Fourth District held that lewdness is a necessary element of nudity. *State v. Walker* (1999), 134 Ohio App.3d 89, 94-95. Neither *Kerrigan* nor *Walker* alleged that their indictments were fatally defective. They both alleged that the State had failed to prove their guilt pursuant to R.C. 2907.323(A)(3) and (A)(1) respectively.

{¶ 20} In *State v. Ross* (1967), 12 Ohio St.2d 37, the Ohio Supreme Court held that when a criminal statute does not clearly make a certain specific intent an element of the offense, but judicial interpretation has made such intent a necessary element, an indictment charging the offense solely in the language of the statute is insufficient.

{¶ 21} In *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, the United States Supreme Court endorsed *Young's* construction of R.C. 2907.323(A)(3) to avoid First Amendment issues. The court rejected Osborne's view that an overbroad statute is void as written, such that a court may not narrow it, affirm a conviction on the basis of the narrowing construction, and leave the statute in full force.

{¶ 22} In *State v. Moss*, supra, Judge Hildebrand weighed in on the issue of whether R.C. 2907.23(A)(3) required an allegation of lewdness or graphic focus on the genitals in order to state an offense. He wrote as follows:

{¶ 23} "Because I believe the trial court properly found Moss guilty of the offense on his no-contest plea, I respectfully dissent. Where an indictment contains sufficient allegations to state an offense and the defendant pleads no contest, the trial court must find the defendant guilty. The majority in the instant case, however, relies on *Osborne v. Ohio* for the proposition that the allegations in the indictment of Moss were insufficient. I disagree.

{¶ 24} "In my opinion, the majority misapplies the holding in *Osborne*. The *Osborne* court merely held that the phrase "state of nudity" by its definition must refer to a lewd exhibition or a graphic focus on the genitals to survive constitutional scrutiny. The court did not thereby engraft or otherwise enact additional elements to the offense. Indeed, the judiciary would not be empowered to effectuate such a legislative amendment.

{¶ 25} "Pursuant to the *Osborne* holding, an admission to the facts of an indictment that alleges the depiction of a "state of nudity" includes by definition an admission to lewdness or graphic focus on the genitals. It is not necessary to expressly allege the definition of the term 'state of nudity' properly state an offense, just as it would not be necessary to define terms such as "deadly weapon" or "serious physical harm" in an indictment for felonious assault. Though the state would have to prove that the material was lewd or graphically focused on the genitals if the case had gone to trial, the admission of the element 'state of nudity" in a no-contest plea subsumes the lewdness or graphic focus circumstances as mandated by the First Amendment and the holding of the court in *Osborne*.

{¶ 26} "To hold otherwise would assume that the statute, as written, fails to state an offense for which a person could be convicted. The *Osborne* holding simply does not stand for that proposition, and indeed, the court in *Osborne* expressly declined to extend its holding

that far.    The effect of the majority's decision in the case at bar is to impermissibly ignore the dictates of the *Osborne* holding and in effect invalidate the statute as written.    Because such a holding is not warranted by the First Amendment or the case law construing R.C. 2907.323(A)(3), I would affirm the conviction in the case at bar.    Accordingly, I dissent."

{¶ 27} We agree with the State that the judicial construction placed on the element "state of nudity" is not a separate element but merely defines that element in R.C. 2907.323(A)(1) and (A)(3).    The indictment as worded properly sets forth offenses under Ohio law and satisfied Crim.R. 7(B).    The trial court properly overruled Sullivan's motion to dismiss the indictment.

{¶ 28} In his second assignment, Sullivan contends the trial court erred in denying his Crim.R. 29 motions as to Count Two which he made at the conclusion of the State's case and at the conclusion of the evidence.

{¶ 29} R.C. 2907.322(A)(1) provides as follows:

{¶ 30} "No person, with knowledge of the character of the material or performance involved, shall * * * [c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality."    Appellant argues that while he admitted to possessing the video that showed A.K. masturbating, and to stealing it from Tokio Hotel's website, he did not admit to creating, recording, photographing, filming, developing, reproducing or publishing the video.    He argues that there is no evidence in the record that he did any of these things.

{¶ 31} The trial judge, when ruling on the Rule 29 motions, commented that because Sullivan admitted to downloading the video from the website of Tokio Hotel, that the motion

was overruled. Sullivan argues that the only colorable argument that he violated division (A)(1) is that by downloading the video he actually "reproduced it." Sullivan argues that the only admission he made to Detective Meade was he "stole the video back from the website." (Tr. 349.)

{¶ 32} The State, for its part, argues the trial court properly overruled Sullivan's Crim.R. 29 motions because the evidence established that Sullivan stole the video image from the Tokio Hotel website and it was found on his flash card along with his laptop computer. The State argues the jury could reasonably conclude Sullivan had "reproduced" the video by downloading it on a flash card.

{¶ 33} The State notes that at best one appellate court has held that evidence proving sexually orientated matter was saved from a computer's hard drive onto disks, or downloaded from the Internet and stored onto disks, is sufficient evidence for a trier of fact to conclude the images were reproduced for purposes of R.C. 2907.322(A)(1). *State v. Huffman*, 165 Ohio App.3d 518, 2006-Ohio-1106.

{¶ 34} We find the *Huffman* opinion to be persuasive. The appellant's second assignment of error is likewise Overruled. Appellate counsel has not raised issues regarding the severity of the sentence imposed by the trial court nor whether any of the counts in the indictment are allied offenses of a similar import. We need not address those issues at this time. The judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurring separately:

**{¶ 35}** I generally agree with the dissent that as long as Ohio mandates grand jury findings for a felony charge, that any ensuing indictment should reflect such consideration. See, also, the dissent in *State v. Vaughn*, Lorain App. No. 10 CA 009820, 2011-Ohio-394, ¶34 et seq. and its cited cases. Even if the hoary aphorism that a grand jury would indict a ham sandwich were true, such a result should still make clear that the grand jury considered what the sandwich allegedly did.

**{¶ 36}** However, I concur with the majority. First, the indictment states all the elements by tracking the statute verbatim. An indictment meets constitutional requirements if it contains the elements of the offense charged and fairly informs a defendant of the charge against him and it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *State v. Childs*, 88 Ohio St.3d 558, 564-565, 2000-Ohio-425, quoting *Hamling v. United States* (1974), 418 U.S. 87, 117-118.

**{¶ 37}** For the reasons stated by Judge Brogan, I agree that the statutory elements of the charged offense need not be further defined in the indictment. The Revised Code is replete with definitions such as, for example only, "recklessness" which is defined as including one who acts with "heedless indifference" or who "perversely disregards a known risk." As terse (if not unambiguous) as is that definition, compare it with R.C. 2901.01(A)(11)(m) which includes in the definition of law enforcement officer "a special police officer employed by a municipal corporation at a municipal airport or other municipal air navigation facility, that has scheduled operations, as defined in Section 119.3 of Title 14 of the Code of Federal Regulations, 14 C.F.R. 119.3, as amended, and that is required to be

under a security program and is governed by aviation security rules of the transportation security administration of the United States department of transportation as provided in Parts 1542. and 1544. of Title 49 of the Code of Federal Regulations, as amended." Or the definition of "computer contaminant" contained in R.C. 2909.01(F) which will not be reproduced here for lack of space. None of this language needs to be included in the indictment.

{¶ 38} Normally, absent the demonstration of a particularized need, we presume that the grand jury received all the appropriate facts and the law to consider whether there was probable cause to return the indictment for a specific statutory violation; a litigant is usually not permitted to look behind such indictment to determine if the grand jury was told the correct legal definitions of the words in the statutes. See, e.g., *State v. Carte*, Cuyahoga App. No. 91534, 2009-Ohio-4193, ¶30.

{¶ 39} Not dissimilarly, an indictment can state alternative means of committing an offense, creating the possible inference that not even the majority of the grand jury agreed upon the particular means by which the offense was committed. See., e.g., *State v. Fitzpatrick*, Lake App. No. 2009-L-030, 2010-Ohio-710; *State v. Vaughn*, supra; *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787 (a petit jury), but see *State v. Lynn*, 185 Ohio App.3d 390, 2009-Ohio-6812, appeal allowed, 125 Ohio St.3d 1413, 2010-Ohio-1893.

{¶ 40} I am concerned in this case that the petit jury was never instructed on the definition of "state of nudity." It was not told that the evidence must prove "a lewd exhibition or involved a graphic focus on the genitals." As mentioned above, the statutes and Ohio Jury Instructions go to legitimate, but almost bewildering, lengths to define terms in

order to ensure the finders of fact are following the same rules, and finding the same facts, but the jury here was not given that guidance.

**{¶ 41}** There was no request for, or objection to the lack of, such an instruction. Reviewing such a record necessarily under the plain error standard, I cannot find that the result clearly would have been different. *State v. Long* (1978), 53 Ohio St.2d 91. The testimony was overwhelming that the pictures constituted a "lewd exhibition or involved graphic focus on the genitals," and it may have been a strategy of defense counsel not to highlight this in jury instructions.

**{¶ 42}** An appellate court is not a ferret and cannot independently scrutinize the record for issues such as the length of the sentence or allied offenses of similar import. I concur in the majority's opinion regarding the assigned errors.

. . . . . . . . . .

GRADY, P.J., dissenting:

**{¶ 43}** The question presented is whether counts four and five of the indictment charging violations of R.C. 2907.323(A)(1), which prohibits photographing a minor who is not the offender's child in a state of nudity or having or transferring performance materials depicting the minor in a state of nudity, are sufficient to charge that offense absent the judicial limitation imposed in *State v. Young* (1988), 37 Ohio St.3d 249. *Young*, relying on *New York v. Ferber* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113, limited application of R.C. 2907.323(A)(1) to the conduct prohibited by that section "where such nudity constitutes a lewd exhibition or a graphic focus on the genitals." *Young*, at p. 252. *Young* imposed that

judicial limitation in order to save R.C. 2907.323(A)(1) from unconstitutionality, per *Ferber*.

{¶ 44} In *State v. Ross* (1967), 12 Ohio St.2d 37, the Supreme Court held:

{¶ 45} "Where a criminal statute does not clearly make a certain specific intent an element of the offense, but judicial interpretation has made such intent a necessary element, an indictment charging the offense solely in the language of the statute is insufficient. (Sections 2941.05 and 2905.34, Revised Code.)"

{¶ 46} The defendant in *Ross* was charged with a violation of former R.C. 2905.34, which by its terms provided that "[n]o person shall knowingly . . . have in his possession or under his control an obscene, lewd, or lascivious . . . photograph . . ." *State v. Jacobellis* (1962), 173 Ohio St. 22, previously held that the crime defined by R.C. 2905.34 was not to knowingly possess or control obscene material, but rather to do it with the guilty intention of using, exhibiting, or selling it wrongfully. *Ross* observed that "[t]his *mens rea* requirement was inferred by reading the language ('knowingly') in context with the rest of the statute, and the motivation behind the inferences was undoubtedly the preservation of language of otherwise questionable constitutionality." *Ross* at 38-39.

{¶ 47} *Ross* held that an indictment charging a violation of R.C. 2905.34 in the terms of the statute, omitting any reference to the *mens rea* requirement imposed by *Jacobellis*, was insufficient to charge the crime alleged. The holding in *Ross* states:

{¶ 48} "'The general rule that an indictment or information for a statutory offense is sufficient if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words, does not apply when the statutory words do not in themselves fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements and

ingredients necessary to constitute the offense intended to be punished. \* \* \*'

{¶ 49} "This exception is not surprising, as it is the logical result of cases requiring every element of a crime to be alleged for an indictment to be sufficient. *Harris v. State*, 125 Ohio St.257, 181 N.E. 104, paragraph four of the syllabus." *Ross* at 38-39, quoting 4 Wharton's Criminal law and Procedure, 626.

{¶ 50} More recently, in *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, the Supreme Court held: "An indictment that charges an offense by tracking the language of the statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a culpable mental state." Paragraph one, Syllabus by the Court.

{¶ 51} The defendant in *Horner* was convicted of two counts of aggravated robbery. R.C. 2911.01(A)(1). That section contains no culpable mental state. Applying the default provisions of R.C. 2901.21(B), *Horner* found that R.C. 2911.01(A)(1) is a strict liability offense. Therefore, because proof of a culpable mental state is not required, it was sufficient to track the language of the section in order to charge the offense in an indictment. *Id.*, at ¶53.

{¶ 52} Clearly, *Horner* does not speak to the issue decided in *Ross*. Neither did *Horner* overrule *Ross*. Instead, *Horner* was largely concerned with clarifying the confusion created by the holdings in *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, and State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, which *Horner* called "a boon to defendants, a headache to appellate courts, and a nightmare to prosecutors." *Id.*, at ¶44, quoting *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, at ¶35. (Lanzinger, J., concurring in judgment only.) Therefore, *Ross* remains good law.

{¶ 53} *Ross* held that, absent the judicial limitation it imposed, an indictment charging a violation of R.C. 2905.34 was insufficient to put an accused on notice of the criminal liability he faces, which is required by due process.   *Ross* cited *Harris v. State* (1932), 125 Ohio St.257, in support of that proposition.   *Harris* also made a further observation:

{¶ 54} "The material and essential facts constituting an offense are found by the presentment of the grand jury; and if one of the vital and material elements identifying and characterizing the crime has been omitted from the indictment such defective indictment is insufficient to charge an offense, and cannot be cured by the court, as such a procedure would not only violate the constitutional rights of the accused, but would allow the court to convict him on an indictment essentially different from that found by the grand jury."   *Id*., at 264.

{¶ 55} That reference in *Harris* is to Section 10, Article I of the Ohio Constitution, stating that "no person shall be held to answer for a capital or otherwise infamous, crime, unless on presentment or indictment of a grand jury."   That section applies to felony offenses, including R.C. 2907.323(A)(3).

{¶ 56} The grand jury clause of Section 10, Article I has been part of the Ohio Constitution since 1802.   It was adopted in its present form in 1851.   Grand juries had existed at common law and were one of the most significant protections against malicious or untoward prosecutions.   *State ex rel. Doefler v. Price* (1920), 101 Ohio St. 50.   Most states and the federal government use grand juries, although the Fifth Amendment does not require the states to use them.   *Branzburg v. Hayes* (1972), 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626.   "In fact, the right to a grand jury is the only right under the Fifth and Sixth Amendments that the U.S. Supreme Court has not applied to the states, and states are free to initiate

criminal prosecutions through other means." Steinglass and Scarselli, The Ohio State Constitution, A Reference Guide, Praegar (2004), p. 93.

{¶ 57} "[T]he grand-jury requirement found in Section 10, Article I of the Ohio Constitution does not merely guarantee notice and guard against double jeopardy. Section 10 also requires a grand jury to consider every element of a charged offense before issuing an indictment." *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, at ¶14. (Moyer, C.J., dissenting). It guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury, which reports a finding by the grand jury. *State v. Headley* (1983), 6 Ohio St.3d 475. Where, as here, the language of the statute might also apply to conduct which is non-criminal, an indictment in the terms of the statute could permit the grand jury to issue an indictment absent any finding of the particular criminal conduct a violation requires. That, clearly, would violate the purpose and intent of the grand jury clause in Section 10, Article I.

{¶ 58} In *State v. Moss* (April 14, 2000), Hamilton App. No. C-990631, the First District wrote that *Young* "judicially engrafted" the *Ferber* elements onto R.C. 2907.323(A)(3). Judge Hildebrandt took issue with that view in his dissenting opinion, stating that "the judiciary would not be empowered to effectuate such a legislative amendment." *Id.*, p. 2. The Twelfth District echoed that view in *State v. O'Connor*, Butler App. No. CAS2001-08-195, 2002-Ohio-4122, stating, at ¶30: "only the legislature, not the judiciary, has the power to engraft or enact additional elements to the offense."

{¶ 59} These views recite a point with which every judge and judicial candidate is familiar: courts don't make laws; that's a function reserved to the legislative branch, and

courts can't exercise that power under any circumstance, ever. That rubric, which is based on the separation of powers doctrine, is surely correct. But, it doesn't fit this circumstance.

{¶ 60} When a court limits the application of a statute, as the courts did in *Ross* and *Young*, the court is not making law. The court is merely limiting the application of a law the legislative branch enacted in order to avoid striking the law down as unconstitutional. For example, because R.C. 2907.323(A)(3), as written, offends the First Amendment, which provides that "no law" abridging freedom of speech may be enacted, the limitation *Young* imposed avoids a free speech violation and preserves the statute by removing its unconstitutional feature. Review of constitutional questions is a judicial function. As a matter of comity between the branches of government, courts avoid striking down a statute as unconstitutional when it can be saved by severing the defect or curing the omission that renders the statute unconstitutional. That's what the court in *Young* did. E.g., *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.

{¶ 61} Finally, the view expressed in *Moss and O'Connor* reflects the way in which those cases proceeded. Both involved no contest pleas and challenges on appeal to the sufficiency or manifest weight of the evidence. Neither involved a Crim.R. 12(C)(2) motion to dismiss for a defect in the indictment, which the present case does. That motion was proper, and it presented the legal issues in a clearer light.

{¶ 62} I would find that the trial court erred when it denied Defendant's motion to dismiss the indictment, because by charging the offense in the terms of R.C. 2907.323(A)(3), absent a finding of the particular requirement *Young* imposes, the indictment fails to allege an offense.

. . . . . . . . . . . . .

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Robert E. Searfoss, III
Hon. Barbara P. Gorman