[Cite as *State v. Hopkins*, 2012-Ohio-5536.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24940 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-1661/2 |
| v. | : | |
| | : | |
| SHANE L. HOPKINS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of November, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

ELIZABETH N. GABA, Atty. Reg. #0063152, 1231 East Broad Street, Columbus, Ohio 43205
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Shane L. Hopkins appeals from his conviction on charges of rape, kidnapping,

and firearm specifications.

{¶ 2}    Hopkins advances six assignments of error on appeal. First, he contends the trial court erred in allowing the State to proceed on a fatally flawed indictment that suffered from duplicity. Hopkins asserts that this error was compounded by jury instructions that failed to clarify the indictment. Second, he claims prosecutorial misconduct deprived him of his right to a fair trial. Third, he alleges ineffective assistance of counsel based on his attorney's failure to impeach the complaining witness with her prior deposition testimony. Fourth, he alleges ineffective assistance of counsel based on his attorney's failure to seek suppression of incriminating statements he made following his arrest. Fifth, he challenges the legal sufficiency and manifest weight of the evidence to support his convictions. Sixth, he alleges ineffective assistance of counsel based on his attorney's failure to move to sever his trial from that of his co-defendant.

{¶ 3}    The present appeal stems from events that occurred on the night of May 10, 2011. At that time, twenty-year-old J.R. and her fiancé, J.S., were living in an abandoned house. J.R. and J.S. were homeless drug addicts who pan-handled for money. Late that night, they went to sleep in a front bedroom of the house, which was located at 515 Gramont Avenue. At some point, they heard a knock on the door and a voice outside. Thinking he recognized the voice, J.S. told the person to climb through an open window. The person was not who J.S. anticipated. According to J.R., it was Rashawn Jeffrey, who entered the house waving a black Glock handgun. Jeffrey stated that the house belonged to his grandmother and complained that it was a mess. Hopkins also allegedly entered the house through the window after Jeffrey.

{¶ 4}    When Hopkins went into a separate room to use the restroom, Jeffrey led J.R.

into a back bedroom with the gun in his hand and demanded "payment." At trial, J.R. testified that Jeffrey then forced her to perform oral sex on him. As she was doing so, Hopkins appeared behind her. Jeffrey announced that Hopkins was entitled to "payment" too. According to J.R., Hopkins proceeded to remove her shorts, bend her over, and have sex with her from behind while she resumed having oral sex with Jeffrey. While this activity was occurring, J.S. approached the closed bedroom door and asked J.R. whether she was okay. Jeffrey lifted the gun to J.R.'s head, which prompted her to say she was fine.

{¶ 5} Not believing that J.R. was okay, J.S. left the house through a front window and called police. J.R. testified that she saw flashing police lights outside the house while the forced sexual activity was still occurring. Upon noticing the lights, Hopkins and Jeffrey stopped what they were doing, cursed, and accompanied J.R. into the front bedroom. The two men jumped out a window and fled. J.R. exited the house and informed J.S. she had been raped. J.R. also told an officer who arrived at the scene that she had been raped and gave a description of her attackers. Another officer saw two men matching the description walking on Gramont Avenue. The individual in the front, Jeffrey, appeared to be fastening his pants. Hopkins was behind him. Police arrested the two men, and J.R. identified them at the scene as her attackers.

{¶ 6} Inside the house, J.R. led police to where she had spit out Jeffrey's semen after he ejaculated in her mouth. Police observed J.R.'s shorts in the back bedroom along with a pool of saliva containing a slimy substance that appeared to be semen. They also saw a used condom and a gold Magnum condom wrapper. Police found a black Glock handgun on the front porch of a home at 523 Gramont Avenue. A package of Trojan Magnum condoms in

gold wrappers later was found in Hopkins' wallet. Upon being questioned, Hopkins initially denied going inside the house where J.R. was raped. He later admitted going into the house and admitted having sex with J.R.. He insisted, however, that the sex was consensual. Testing revealed the presence of DNA from J.R. and Hopkins on the used condom found inside the house.

{¶ 7} In the weeks following the incident, J.R. recanted her allegations and gave varying accounts of what had happened. At one point, she told investigators that Hopkins did not rape her and that he could not get an erection. She also told Hopkins' and Jeffrey's friends and family that she had not been raped and that she had made up the allegations. At trial, J.R. explained that she had been scared and felt threatened by the two defendants' friends and family members when she recanted her allegations. Among other things, she testified that she had received repeated phone calls, was followed, and was even threatened with a gun in order to force her to recant.

{¶ 8} After hearing the evidence presented at trial, a jury convicted Hopkins of rape, kidnapping, and accompanying firearm specifications. The trial court merged the kidnapping conviction into the rape conviction and merged the firearm specifications. It then imposed a ten-year prison sentence for rape and a consecutive three-year prison sentence for the firearm specification. This appeal followed.

{¶ 9} In his first assignment of error, Hopkins contends his indictment suffered from duplicity. He argues that his jury instructions compounded the duplicity problem by failing to provide clarification. In particular, Hopkins contends both counts in his indictment charged more than one offense against more than one person and that the counts failed to specify

whether he acted as the principal offender or as an accomplice. Hopkins further argues that the firearm specifications were equally unclear.

{¶ 10}   Count one of the indictment reads:

> **THE GRAND JURORS** of the County of Montgomery, in the name, and by the authority of the State of Ohio, upon their oaths do find and present that: **RAYSHAWN T. JEFFREY and SHANE L. HOPKINS**, *on or about* **May 11, 2011** *in the County of Montgomery, aforesaid, and State of Ohio*, did engage in sexual conduct with another, by purposely compelling the other person to submit by force or threat of force * * *.

{¶ 11}   Count one contains a firearm specification that reads:

> The grand jurors further finds [sic] and specifies that while committing the aforesaid offense, **RAYSHAWN T. JEFFREY and SHANE L. HOPKINS**, had on or about his/her person or under his/her control, a firearm and displayed the firearm, brandished the firearm, indicated that he/she possessed the firearm, or used it to facilitate the offense * * *.

{¶ 12}   Count two of the indictment reads:

> AND the grand jurors of this County, in the name and by the authority of the State  of Ohio, upon their oaths, do find and present that: **RAYSHAWN T. JEFFREY and SHANE L. HOPKINS**, on or about **May 11, 2011** in the County of Montgomery, aforesaid, and State of Ohio, did by force, threat or deception, or in the case of a victim under the age of thirteen or mentally incompetent, by any means, did remove another from the place where the other

person was found or restrain the liberty of the other person, for the purpose of engaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with the victim against the victim's will * * *.

**{¶ 13}** Finally, the firearm specification to count two reads:

The grand jurors further finds [sic] and specifies that while committing the aforesaid offense, **RAYSHAWN T. JEFFREY and SHANE L. HOPKINS**, had on or about his/her person or under his/her control, a firearm and displayed the firearm, brandished the firearm, indicated that he/she possessed the firearm, or used it to facilitate the offense * * *.

**{¶ 14}** Upon review, we find no merit in Hopkins' argument about duplicity. As an initial matter, we note that he did not raise the duplicity issue below. Therefore, he has forfeited all but plain-error review. *State v. Myers*, 2d Dist. Darke No. 1643, 2006-Ohio-1604, ¶45 (recognizing that "defects to an indictment, such as duplicity and vagueness, must be raised prior to trial or the issue is waived"). We see no plain error. Had the issue been raised by timely objection, any potential deficiency could have been cured, and the result would be no different. Thus, there is no plain error.

**{¶ 15}** "Duplicity" involves "joining two or more distinct offenses into a single count." *State v. Cline*, 2d Dist. Champaign No. 07CA02, 2008-Ohio-1866, ¶20. Hopkins' indictment did not charge multiple distinct offenses against him in a single count. Count one charged rape in the language of the applicable statute, and count two charged kidnapping in the language of that statute. Although the kidnapping charge identified several ways for the offense to be committed, it was not flawed. *State v. Sullivan*, 2d Dist. Montgomery No. 23948,

2011-Ohio-2976, ¶39 (Froelich, J., concurring) (noting that "an indictment can state alternative means of committing an offense"). The firearm specifications, which also tracked the language of the applicable statute, did likewise. Finally, the indictment was not required to specify whether Hopkins was being charged as a principal or an accomplice. *State v. Herring*, 84 Ohio St.3d 246, 251, 2002-Ohio-796, 762 N.E.2d 940.

{¶ 16} We do acknowledge that count one of the indictment charged the single offense of rape twice, once against Hopkins and once against Jeffrey. Likewise count two charged the single offense of kidnapping twice, once against Hopkins and once against Jeffrey. The firearm specifications do the same. But we see no grounds for reversal on the basis of duplicity, which involves multiple offenses being joined in a single count rather than multiple defendants being joined in a single offense. Moreover, we fail to see how Hopkins could have been prejudiced by the State's failure to charge Jeffrey with rape and kidnapping in separate counts, particularly since the jury received separate verdict forms for each defendant. The first assignment of error is overruled.

{¶ 17} In his second assignment of error, Hopkins claims prosecutorial misconduct deprived him of his right to a fair trial. In support, he argues that the prosecutor engaged in the following four types of misconduct: (1) aligning herself with the jury; (2) aligning herself with J.R., vouching for J.R., and telling the jury what others were thinking and feeling; (3) shifting the burden of proof by commenting on his failure to testify; and (4) threatening J.R. and her fiancé with charges and having them arrested on material-witness warrants to get them to conform their stories to the State's version of the facts.

{¶ 18} "'The test for prosecutorial misconduct is whether the prosecutor's acts were improper in their nature and character and, if they were, whether the substantial rights of the

defendant to a fair trial were prejudiced thereby.'" (Citations omitted) *State v. Hauptstueck*, 2d Dist. Montgomery No. 24013, 2011-Ohio-3502, ¶11. Upon review, we see no prosecutorial misconduct.

{¶ 19} First, the prosecutor did not improperly align herself with the jury. Hopkins challenges the prosecutor's voir dire statement to potential jurors that her client was "the People of the State of Ohio" and that her role was to present evidence so they could determine whether the alleged crimes occurred. (Tr. Vol. II at 251, 280-282). We find nothing improper about these remarks.

{¶ 20} Second, the prosecutor did not improperly align herself with J.R. or vouch for J.R.. The first portion of Hopkins' argument concerns the prosecutor's inquiry, during voir dire, about whether potential jurors could remain fair and impartial despite J.R.'s status as a homeless drug addict who pan-handled for money.[1] (*Id.* at 296-297). We see nothing objectionable about this inquiry, particularly since a prospective juror first raised an issue about being empathetic to homeless people and drug addicts. (*Id.* at 290-292). Hopkins also complains about the prosecutor making a statement that Jeffrey was fastening his pants as he left the crime scene. This statement was not objectionable as it was based on the evidence, which included an officer's testimony that he saw Jeffrey outside fastening his pants. We also see no prosecutorial misconduct in Hopkins' argument that the prosecutor improperly vouched for J.R.. When discussing J.R.'s testimony in closing argument, the prosecutor stated, "That's

---

[1] Near the end of these remarks, the prosecutor also started to suggest that the important thing was what J.R. would say in court, not what she might have said or done in the past. (Tr. Vol. II at 297). The trial court immediately corrected the prosecutor, explaining to prospective jurors that J.R.'s credibility should be evaluated more broadly by considering her words and actions both before trial and during trial. (*Id.* at 299). We presume the chosen jurors followed the trial court's admonition. Therefore, this aspect of the prosecutor's voir dire did not prejudice Hopkins.

how you know she's telling the truth" and "you know it's the truth." (Tr. Vol. VI at 1232). When read in context, these statements rebutted Hopkins' prior allegation that J.R. was lying. The prosecutor's statements were grounded in the evidence rather than a personal belief that J.R. was credible. Specifically, the prosecutor pointed out that J.R. lacked any motive to lie and noted that she had been denigrated and had been subjected to insults, embarrassment, and threats as a result of her allegations. This argument was supported by the evidence. But even if the challenged remarks were objectionable, Hopkins did not object to them. Therefore, we are limited to plain-error review. *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶15. We find no plain error. Finally, we find no misconduct based on the prosecutor telling jurors what Hopkins and Jeffrey were thinking or feeling. Having reviewed the cited transcript pages, we note that they reflect the prosecutor's closing argument summary of the events that occurred before, during, and immediately after the rape of J.R.. (Tr. Vol. VI at 1183-1188). To the extent that the prosecutor speculated occasionally about what the participants may have been thinking or feeling, Hopkins failed to object. We find no plain error.

{¶ 21} Third, the prosecutor did not improperly shift the burden of proof by commenting on Hopkins' failure to testify. Hopkins challenges the following remarks by the prosecutor during closing argument:

> * * * I think the evidence supports they're walking like two men who think they're going to get away with rape. They get out the front window. They ditch that gun. They're walking like two men get away with rape. They can't get their story straight.

> *One of them denies, denies, denies. I'm not even sure what his defense*

*is. He has a right to sit there and say nothing. He didn't say nothing to the police although he had a right not to, he said I wasn't even there. And today he's arguing, through counsel, that it was consent?*

With respect to him (indicating), he tells pieces of information and then changes his story as the evidence comes in.

J.R. told the story and the evidence matched what she said because it's the truth.

He's the opposite. He's how you know when somebody's not telling you the truth. Because he started, he wasn't even in that house. Well, at first he [stated] he was someplace else. * * * And he sticks with that for a while until somebody says something about his DNA put him in the house. So then he goes a little bit further now that they confront him with that—well, he came in the house but he didn't do nothing; he didn't touch that girl.

And so they confront him with the suggestion yeah, they made it up. They don't waterboard him, for goodness sakes.[2]

(Emphasis added.) (Tr. Vol. VI at 1229-1230).

**{¶ 22}** Contrary to Hopkins' argument, the italicized portion of the prosecutor's remarks above—which he contends constituted improper comments about his failure to testify—were directed toward *Jeffrey*, not Hopkins. Jeffrey is the co-defendant who denied everything and said almost nothing to the police. Conversely, Hopkins is the person, referred to in the second part of the prosecutor's remarks above, who provided police with pieces of

---

[2] The trial court sustained an objection by Hopkins' counsel to the "waterboard" reference. (Tr. Vol. VI at 1230).

information and then changed his story to fit the evidence as the investigation unfolded. Even if the prosecutor's remarks about Jeffrey's failure to testify were objectionable (an issue we need not address or resolve), Hopkins cannot complain about an alleged violation of Jeffrey's constitutional right to remain silent.

{¶ 23} Fourth, the record does not reflect that the prosecutor threatened J.R. and her fiancé with charges and arrested them on material-witness warrants to get them to conform their stories to the State's version of the facts. To support this assertion, Hopkins relies on the trial testimony of another prosecution witness, Javon Jones. At one point, he testified: "Somebody told me if I don't come to court they was going to charge me with it." (Tr. Vol. III at 456). He then added: "They said that if I don't come to court, I could be charged with false information." (*Id*. at 457). Based on Jones' testimony, Hopkins argues as follows:

> Presuming Javon's testimony accurately described the Standard Operating Procedure of the State and/or the police, when [J.R.] and [J.S.] were arrested, they were also told they were going to be charged "with false information." And so they both, inartfully, withdrew portions of their August 1 recantations and admissions at the deposition and at the trial. J.R. and J.S. were not afraid of the defendants. They were afraid of the Montgomery County Prosecutor.

(Appellant's brief at 20).

{¶ 24} Although J.R. and J.S. were detained on material-witness warrants, we see no evidence that they were threatened with charges or anything else to coerce them to change their stories. As an initial matter, the "somebody" who told Javon Jones he might be charged with "it" if he did not come to court was apparently his own mother. (Tr. Vol. III at 456).

Police did tell Jones that he could be arrested for failing to appear or charged for making a false statement, but these warnings were accurate. In any event, the prosecutor assured Jones at the outset of his trial testimony that he was not going to be charged. (*Id*. at 426). More importantly, Hopkins relies on Jones' belief about what could happen to him if he refused to testify and imputes it to J.R. and J.S.. But Hopkins cites no evidence that J.R. and J.S. ever were threatened with charges if they refused to testify as the State wanted. Nor does Hopkins cite any evidence that J.R. and J.S. were held on material-witness warrants to force them to provide testimony consistent with the State's theory of the case. Absent a citation to evidence substantiating these claims, we cannot find prosecutorial misconduct. The   second assignment of error is overruled.

{¶ 25}   In his third assignment of error, Hopkins alleges ineffective assistance of counsel based on his attorney's failure to impeach J.R. with her pre-trial deposition testimony. Hopkins claims J.R. admitted in her deposition that she never had sex with him.   He contends she also admitted telling police that he did not penetrate her vagina, that he did not have an erection, and that Jeffrey forced him to try to rape her. Finally, Hopkins asserts that J.R. admitted in her deposition that he never threatened her and that his family never threatened her. Hopkins argues that J.R. contradicted these statements in her trial testimony and that his attorney should have impeached her with the contradictions.

{¶ 26}   To prevail on his claim, Hopkins must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *Id.* at 694.

**{¶ 27}** Having reviewed the record, we see no ineffective assistance of counsel based on the failure of Hopkins' attorney to impeach J.R. with her deposition testimony. As an initial matter, J.R. did not admit, during her deposition testimony, that she never had sex with Hopkins. Rather she stated that she never had sex with him *willingly*. (Tr. Vol. I at 131). In addition, as noted by the State, Hopkins' attorney did attempt to impeach J.R. with her deposition testimony. On cross examination, J.R. admitted saying during her deposition that Hopkins' mother had not threatened her. (Tr. Vol. III at 634-635). Although defense counsel did not refer to the deposition, he also got J.R. to admit that she previously had said Hopkins did not rape her. (*Id*. at 633, 635-636). Hopkins' attorney reasonably may have elected not to engage in more cross examination with the deposition because Jeffrey's attorney already had addressed her inconsistencies. Specifically, Jeffrey's attorney got J.R. to admit that she previously had told police Hopkins did not rape her, that he could not get an erection, and she "made the whole thing up about [Hopkins]." (*Id*. at 618).

**{¶ 28}** In light of the foregoing testimony, we find no ineffective assistance of counsel based on the failure to attempt further impeachment with J.R.'s deposition. The third assignment of error is overruled.

**{¶ 29}** In his fourth assignment of error, Hopkins alleges ineffective assistance of counsel based on his attorney's failure to seek suppression of incriminating statements he made following his arrest. Specifically, he claims statements he made during two taped police interrogations were "involuntary" under the Fifth Amendment.

**{¶ 30}** In support of this assignment of error, Hopkins argues:

* * * At 10:00 a.m. on May 11, 2011, Shane Hopkins, an 18 year old

unsophisticated youth who was under the influence, and who had been awake at that point for 30 hours, was kept in a small interrogation room without food or sleep and asked to sign papers and give up rights and tell stories. He is clearly barely literate and although there are Miranda documents, his comprehension is minimal. The officers' statements to him are coercive, and are lies. Hopkins' statements are involuntary and should have been suppressed. The tapes should never have been played, and his written statement should never have been read at trial. His trial counsel prejudiced him by not moving to suppress his statements and tapes.

(Appellant's brief at 23).

**{¶ 31}** It is well settled that "[a] defendant's statement to police is voluntary absent evidence that his will was overborne and his capacity for self-determination was critically impaired due to coercive police conduct." *State v. Buk-Shul*, 2d Dist. Montgomery No. 23603, 2010-Ohio-3902, ¶9. "'In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" (citation omitted.) *Id.*

**{¶ 32}** We find no ineffective assistance of counsel based on the lack of a motion to suppress Hopkins' incriminating statements. The tapes do not support a finding that Hopkins' will was overborne or that his capacity for self-determination was critically impaired by the police. As a result, his incriminating statements were not subject to suppression, and would have been admissible regardless of the lack of a suppression motion.

**{¶ 33}** Although Hopkins was eighteen years old, he had prior arrests and was familiar with his *Miranda* rights, which he proceeded to waive before being questioned. As part of the *Miranda* waiver, police read Hopkins' rights to him and assured that he understood them. The two interviews were relatively brief, lasting roughly twenty-five minutes and thirty-five minutes respectively. Hopkins engaged the officers in conversation and was not subjected to any threats, promises, physical force, or abuse.

**{¶ 34}** While Hopkins asserts that he was "under the influence" and had not slept, the record reveals no impairment of his functioning or thought processes. He appeared to be coherent, moved around without trouble, responded appropriately, and demonstrated an ability to recall and relate information. His alleged impairment and tiredness did not prevent him from making calculated and rational decisions. When speaking with police, he initially denied being in the house with J.R.. He then admitted being in the house and having sex with her but claimed it was consensual. As for Hopkins' claim about lies, police did falsely tell him Jeffrey had admitted possessing a gun and having sex with J.R.. But these misrepresentations about the evidence did not render Hopkins' statements involuntary under the totality of the circumstances. *State v. Patel*, 2d Dist. Greene No. 2010-CA-77, 2011-Ohio-6329, ¶75. Finding no evidence of any impermissibly coercive police activity, we conclude that defense counsel did not provide ineffective assistance failing to seek suppression of Hopkins' statements. The fourth assignment of error is overruled.

**{¶ 35}** In his fifth assignment of error, Hopkins challenges the legal sufficiency and manifest weight of the evidence to support his convictions for rape, kidnapping, and the firearm specification. In support, Hopkins provides no specific analysis. Instead, he recites case law governing weight and sufficiency challenges and incorporates, by reference, J.R.'s

"stories" as set forth in his statement of facts. Having reviewed that statement of facts, we infer that Hopkins' manifest-weight and legal-sufficiency challenges are based on J.R.'s credibility in light of her inconsistent allegations about what Hopkins and Jeffrey did to her.

{¶ 36}   More specifically, Hopkins appears to argue that his convictions are based on insufficient evidence and are against the weight of the evidence because J.R. previously had (1) denied engaging in sex with him, (2) stated that he could not get an erection, (3) told people she had fabricated her allegations, (4) acknowledged that the families of Hopkins and Jeffrey had not threatened her, (5) sought food from Hopkins' mother after his arrest, and (6) attempted to obtain money from Hopkins' mother in exchange for making the case go away.

{¶ 37}   When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 38}   Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of

fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 39}** With the foregoing standards in mind, we conclude that Hopkins' rape and kidnapping convictions are supported by legally sufficient evidence and are not against the manifest weight of the evidence. We reach the same conclusion with regard to the firearm specifications.

**{¶ 40}** Immediately after the incident, J.R. showed police where the offenses had occurred. She told them two men forced her to engage in simultaneous oral and vaginal sex, described her attackers, and claimed that one of the perpetrators, Jeffrey, had held a gun on her during the attack. Police found Hopkins and Jeffrey walking on the sidewalk a few houses away immediately after the crimes. Both men matched the description given by J.R., and police observed Jeffrey still fastening his pants. Hopkins and Jeffrey gave inconsistent responses about where they were coming from. J.R. identified both men at the scene as her attackers. Police also found a handgun on the front porch of a house near where J.R. had been raped. The gun, which had been placed next to thorn bushes, matched the description J.R. provided. Police also noted scratches on Jeffrey's hands.

**{¶ 41}** In the bedroom where J.R. claimed to have been vaginally raped by Hopkins, police found a used condom and a condom wrapper. Police discovered the same brand of condom in Hopkins' wallet. Testing of the used condom revealed the presence of Hopkins'

and J.R.'s DNA. Police also found a pool of saliva with apparent semen in it where J.R. claimed Jeffrey had forced her to perform oral sex. Finally, Hopkins spoke to police after his arrest and admitted engaging in sexual activity with J.R., although he claimed that it was consensual.

{¶ 42} The foregoing evidence was legally sufficient to support Hopkins' convictions, and J.R.'s later recantations did not render his convictions against the manifest weight of the evidence. At trial, defense counsel confronted J.R. with her recantations and various inconsistencies. In response, she explained why she had told a different version of events on certain occasions. The jury heard the recantations, the inconsistencies, and the explanations. As the trier of fact, it had the option to believe J.R.'s trial testimony and her explanations or to find her not credible. We will not substitute our judgment for that of the jury on the issue of witness credibility unless the jury plainly lost its way. *State v. Ferguson*, 2d Dist. Clark No. 2010-CA-1, 2011-Ohio-6801, ¶56. That is not the case here. The jury acted within its discretion in crediting J.R.'s trial testimony. The fifth assignment of error is overruled.

{¶ 43} In his sixth assignment of error, Hopkins alleges ineffective assistance of counsel based on his attorney's failure to move to sever his trial from his co-defendant's. Hopkins contends the joint trial violated *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because his conviction may have been based on the jury's review of a taped statement from Rashawn Jeffrey.

{¶ 44} Once again, we see no ineffective assistance of counsel. "A *Bruton* problem arises in a joint trial of two or more defendants when evidence of a confession or statement by a non-testifying defendant is admitted that implicates the other defendant(s) in criminal

activity." *State v. Griffin*, 2d Dist. Montgomery No. 24001, 2012-Ohio-503, ¶54. The underlying reason that this could present a problem is the other defendant's admitted statement cannot be cross examined. However, although the State introduced into evidence a statement from co-defendant Jeffrey, that statement did not implicate Hopkins in any criminal activity. Jeffrey did not admit to being in the house with J.R. and did not place Hopkins there either. Jeffrey stated that he and Hopkins were simply walking down the street when they were stopped by two police officers. (Tr. Vol. V at 1097-1098). This statement is similar to the one Hopkins himself gave police before eventually admitting he had sex with J.R.. Because Jeffrey's statement did not implicate Hopkins in any criminal activity, we see no *Bruton* problem. Therefore, Hopkins' attorney did not provide ineffective assistance by failing to seek severance on the basis of *Bruton*. The sixth assignment of error is overruled.

{¶ 45}   The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

GRADY, P.J., dissenting:

{¶ 46}   Crim.R. 31(A) provides that a jury's "verdict shall be unanimous."   To ensure unanimity, each count of an indictment must allege but one offense to prevent "duplicity."   Duplicity is the joining of two or more distinct offenses in a single count.

{¶ 47}   Shane Hopkins and Rashawn Jeffrey were both charged in Count I of the indictment with rape   in violation of R.C. 2907.02(A)(2).   In Count II, both defendants were charged with kidnapping for the purpose of engaging in sexual activity in violation of R.C. 2905.01(A)(4).

**{¶ 48}** The record reflects that the trial court instructed the jury on the application of R.C. 2923.03 with respect to both the rape and kidnapping charges. Paragraph (A) of that section states:

No person, acting with the kind of culpability required for the commission of an offense, shall * * *

(2) Aid or abet another in committing the offense.

**{¶ 49}** R.C. 2923.03(F) states:

Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

**{¶ 50}** The rape and kidnapping charges involved the same female victim. The State's evidence showed that Jeffrey compelled the victim to engage in fellatio with him while at the same time Hopkins penetrated or attempted to penetrate the victim vaginally with his penis. Therefore, on the charges against him in Count I, the jury could have found Hopkins guilty as either the principal offender in committing the vaginal rape or as an aider and abettor of Jeffrey in the rape of the victim (fellatio) that Jeffrey committed. Hopkins could likewise be convicted as either the principal offender and an aider or abettor in committing the kidnapping offense charged in Count II on the same basis.

**{¶ 51}** An accused may be convicted of a single offense as a principal offender or an aider or abettor, and the two are "alternative means" of committing the same offense. In that event, separate counts are not required. However, when "multiple acts" are alleged, each of

which could constitute a distinct offense, each act must be the subject of a single count to avoid duplicity. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 52-56. Multiple acts are alleged when the conduct involved can be divided into two or more distinct conceptual groupings. In that event, when multiple acts are charged in the same count, either the prosecution must elect on which act to rely in order to obtain a conviction, or the jury must be instructed specifically that it must unanimously find that the accused committed acts within one conceptual grouping in order to reach the unanimous verdict that Crim. R.31(A) requires. *Id*.

**{¶ 52}** Defendant did not object to the duplicitous counts in the indictment, a defect the court could have corrected by amending the indictment, Crim.R.7(D), or by requiring the State to elect on which of Hopkins' multiple acts the State would rely, or by giving the required instruction on unanimity. Defendant's failure to object waives all but plain error. Structural error is plain error.

**{¶ 53}** The jury returned a verdict finding Hopkins guilty of the rape offense alleged in Count I. However, it remains unclear whether their finding was that Hopkins was the principal offender in committing the vaginal rape or that he aided and abetted Jeffrey in his commission of a different (fellatio) rape offense. The same form of defect applies to the kidnapping offense of which Hopkins was found guilty. The discrepancies permit a lack of the unanimity that Crim.R. 31(A) mandates, and are structural error in Hopkins' resulting convictions for those offenses that constitute plain error. I would sustain Hopkins' first assignment of error, reverse his convictions, and remand the case for a new trial.

. . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Elizabeth N. Gaba
Hon. Michael Tucker